**THOMAS and JULIE CARSON, d/b/a THE CARSON COMPANY, Plaintiffs**

and

**PHILLIP STURM, d/b/a STURM HAIR STUDIO, Intervenor**

v.

**SKANDIA INSURANCE COMPANY, LTD., Defendant**

Civil No. 80-44

District Court of the Virgin Islands

Div. of St. Thomas and St. John

June 9, 1982

PETER MARTIN, ESQ., St. Thomas, V.I., *for plaintiff*

THOMAS K. MOORE, Esq., St. Thomas, V.I., *for intervenor*

EDITH BORNN, ESQ., St. Thomas, V.I., *for defendant*

PHILIP R. KASTELLEC, ESQ., New York, New York, U.S.A., *pro hac vice, for defendant*

CHRISTIAN, *Chief Judge*

## MEMORANDUM OPINION

### I. *Introduction*

On the eve of trial defendant Skandia Insurance Company, Ltd. (hereinafter "Skandia") filed a motion to dismiss this action which alleged most of the defenses listed in Fed. R. Civ. P. 12(b), as well as comity and abstention. Such motion is untimely as this action has been pending for over two years and the information the defendant relies on to argue its position was available to it at the outset of this cause. Nevertheless, we reviewed the motion on its merits because all Fed. R. Civ. P. 12(b) defenses had been preserved by assertions in defendant's answer to the complaint. See Fed. R. Civ. P. 12(h). The motion was then denied by May 26, 1982, Order. This memorandum opinion explains the reasons for our decision.

The relevant facts of this case are as follows. Phillip Sturm is the owner and operator of a beauty salon, known as Phillip Sturm Hair Studio, which is located in the Royal Dane Mall, Charlotte Amalie, St. Thomas, Virgin Islands. In 1975, Phillip Sturm contacted West Indies Insurance Agency (hereinafter "W.I. Insurance") in St. Thomas regarding the purchase of an insurance policy for his business. W.I. Insurance, acting as the alleged agent for Commonwealth Insurance Company (hereinafter "Commonwealth") subsequently entered into an insurance contract with Sturm for the period of December 1, 1975, to December 1, 1978. Allegedly attached to the aforesaid insurance contract was a document which is described as a "cut-through endorsement."

The cut-through endorsement at issue was allegedly signed by W.I. Insurance, as the alleged agent of Commonwealth, and by defendant Skandia Insurance Company, Ltd. The endorsement provided the following in pertinent part:

> In the event of the insolvency of COMMONWEALTH INSUR-ANCE COMPANY the subscribing reinsurer hereunder shall pay directly to the named insured and the loss payee herein named, as their interests may appear, 100% of any loss payable in accordance with the terms and conditions of the original policy of insurance, as an [sic] if amended, described herein.

On its face, the endorsement also stated that it was "[a]ttached to and forming a part of" Sturm's insurance policy with Commonwealth.

On December 17, 1976, and January 17, 1977, an antique store owned by the plaintiffs, which is located beneath the Phillip Sturm Hair Studio, suffered flood damage. On November 23, 1977, the

plaintiffs brought suit against Phillip Sturm in this Court, alleging that the injury to their property was caused by the negligence of Phillip Sturm. Carson v. Sturm, No. 77-297 (D.V.I. April 26, 1979). Commonwealth initially defended the suit on behalf of Phillip Sturm because Sturm's liability in that action was allegedly covered by the aforementioned insurance policy. However, Commonwealth withdrew its defense of the suit after the judicial declaration on July 28, 1978, that Commonwealth was insolvent and should be liquidated. Cruz v. The Commonwealth Insurance Company, No. PE-77-1656 (Super. Ct. P. R. July 28, 1978). Defendant Skandia did not assume the responsibility of Sturm's defense after the withdrawal of Commonwealth. This Court tried the action and a judgment was entered against Sturm in the amount of $89,221.28, plus costs and attorney's fees. Carson v. Sturm, No. 77-297 (D.V.I. April 26, 1979).

The instant case was brought by plaintiffs against defendant Skandia to recover the amount of the April 26, 1979, Judgment against Phillip Sturm. Plaintiffs contend that the cut-through endorsement attached to Sturm's insurance policy with Commonwealth obligates Skandia to pay the aforesaid judgment. Plaintiffs allege that they have a right to bring a direct action against Skandia by virtue of the alleged assignment to the plaintiffs of Sturm's rights under the cut-through endorsement, to the extent of the judgment.

On September 26, 1980, this Court granted Phillip Sturm's motion to intervene in this cause. Phillip Sturm contends that defendant Skandia breached its duty of good faith and fair dealing to Sturm imposed by the cut-through endorsement at issue, and as a result, Skandia is liable to Sturm for compensatory and punitive damages.

## II. *Service of Process*

Turning to the defendant's motion to dismiss, we will discuss each ground alleged by the defendant in turn. Its first defense is insufficiency of "process" and "service of process." Fed. R. Civ. P. 12(b)(4) and (5).

On February 15, 1980, this Court granted the plaintiffs permission to serve defendant Skandia by mail, return receipt requested, pursuant to 5 V.I.C. § 4911(a)(3) and Fed. R. Civ. P. 4(e).[1] The sum-

---

[1] Fed. R. Civ. P. 4(e) authorizes service of process by methods provided for in the statutes of the territory when a party is not an inhabitant or found within the territory.

 5 V.I.C. § 4911(a)(3) states the following in pertinent part:

 "(a) When the law of this territory authorizes service outside this territory, the

mons and complaint was subsequently mailed to 280 Park Avenue, New York, New York, addressed to the "Presiding Officer or Agent in charge of Skandia Insurance Company, Ltd." On March 6, 1980, the summons and complaint was received by Thomas M. Tobias at the aforesaid address. At that time, Thomas M. Tobias, Esq., was Assistant Secretary of Skandia Corporation (hereinafter "S.C.") and Assistant Vice President and Assistant General Counsel of Skandia America Reinsurance Company (hereinafter "S.A.R.C."). The duties of Mr. Tobias included supervision of the legal affairs of S.C. and S.A.R.C. On May 1, 1980, Skandia filed an answer to the complaint.

Defendant Skandia contests the service upon Mr. Tobias at 280 Park Avenue on the grounds that Skandia does not have an office on Park Avenue or anywhere else in the United States. Skandia alleges that although S.C. and S.A.R.C. are located at 280 Park Avenue, such companies are independent of Skandia, even though they are wholly owned subsidiaries of Skandia. Skandia further alleges that neither S.C. nor S.A.R.C. are authorized to receive process on its behalf. Skandia concludes that the process was defective because service on a subsidiary is sufficient service on the parent corporation only in limited circumstances not present in this cause.

■■ We find that the plaintiffs' service of process was proper for the following reasons. Fed. R. Civ. P. 4(d)(3) provides that service upon a corporation shall be made "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." There is no set definition of "managing or general agent." That term has been construed broadly to include any person whose position is such that "there is a high probability that the papers will reach those persons in the organization responsible for protecting the firm's interests in the litigation." Wright & Miller, Federal Practice and Procedure: Civil § 1074 at 295 (1969). In this jurisdiction, the following has been stated on the issue:

> The purpose of the rule is to bring home to the defendant notice of the filing of the action; service should be made upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when

---

service, when reasonably calculated to give actual notice, may be made:
. . .
(3) by any form of mail addressed to the person to be served and requiring a signed receipt;
. . ."

made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service.

Hogin v. Islands Ideas, Inc., 9 V.I. 201, 204 (V.I. Mun. Ct. 1973) (quoting American Football League v. National Football League, 27 F.R.D. 264, 269 (D. Md. 1961)).

Applying the aforesaid principles to the facts of this case, we find that Mr. Tobias was a Skandia "managing or general agent" for service within the meaning of Fed. R. Civ. P. 4(d)(3). At the time of service, Mr. Tobias was an officer and legal adviser of two of defendant's subsidiaries, and thus "by definition . . . of sufficient rank to insure that the parent will be notified of the service." Fooshee v. Interstate Vending Co., 234 F.Supp. 44, 52 (D. Kan. 1964). Further, as Mr. Tobias was counsel to the subsidiaries, it can be assumed that he had "the intelligence to understand the purport of the service." See Promotion Network, Inc. v. C. DaSilva (Vinhos) S.A.R.L., 63 F.R.D. 435, 440 (N.D. Ill. 1974). Mr. Tobias in fact acted in accordance with the foregoing presumptions. He opened mail addressed to the "Presiding Officer or Agent in Charge" of Skandia. It is apparent that he promptly forwarded the summons and complaint to the appropriate person(s), as an answer to the complaint was filed in St. Thomas in less than two months after Mr. Tobias' receipt of service.

Besides satisfying the statutory requirements, plaintiffs' service was in compliance with the due process mandates of the United States Constitution.[2] "As a matter of constitutional principle, service is proper if that service gives the defendant notice of the proceedings." Bolling v. Commissioner of Education, 14 V.I. 111, 115 (Terr. Ct. V.I. 1977). Skandia has had actual notice of this law suit for over two years.

Defendant also contests the service of the intervenor's complaint on its local counsel in this action, Edith L. Bornn, Esq., because Attorney Bornn is not an "appointed agent" of Skandia. That contention is without merit. Fed. R. Civ. P. 5(b) states that service of all pleadings subsequent to the original complaint shall be made upon the attorney representing the party "unless service upon the party himself is ordered by the court." This Court did not order

---

[2] The due process clause applies to the Virgin Islands by virtue of § 3 of the Revised Organic Act of 1954, as amended.

personal service of the intervenor's complaint. See Order of September 26, 1980.

## III. *Personal Jurisdiction*

The second defense raised by the defendant is that this Court lacks in personam jurisdiction, Fed. R. Civ. P. 12(b)(2). Skandia alleges that it is a Swedish corporation which is not authorized or licensed to do business in the Virgin Islands, that it has no offices or agents in the territory, and that it has not contracted to insure any person, property, or risk in the Virgin Islands. It concludes that there is thus no basis upon which this Court can find that it has the authority to exercise personal jurisdiction. We disagree.

■ As a foreign corporation, Skandia is subject to the jurisdiction of this Court only if its contacts with this forum meet the requirements of the long-arm statute of the Virgin Islands, 5 V.I.C. § 4903,[3] and the due process clause of the United States Constitution. Boyce Plumbing & Electrical Supplies, Inc. v. Witco Chemical Corp., 1982 St. T. Supp. ---- (D.V.I. May 14, 1982). Both prerequisites have been met.

■■ The statutory language of the Virgin Islands long-arm statute is to be interpreted so that its reach coalesces with the maximum constitutional limitations. See Boyce Plumbing, supra, slip op. at 5, cf. Carty v. Beech Aircraft Corp., Nos. 81-2427, 81-2428, slip op. at 17–18 (3rd Cir. May 21, 1982) ("[i]t may be that the District Court's statement that section 4903 is intended to extend the personal jurisdiction of the Virgin Islands 'to the widest constitutional limits' was intended to mean only that those provisions referring to

---

[3] 5 V.I.C. § 4903 provides the following:

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
 (1) transacting any business in this territory;
 (2) contracting to supply services or things in this territory;
 (3) causing tortious injury by an act or omission in this territory;
 (4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory;
 (5) having an interest in, using, or possessing real property in this territory; or
 (6) contracting to insure any person, property, or risk located within this territory at the time of contracting.
(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him."

the defendants' contacts with the forum would be interpreted in that manner. We leave that issue for another day . . ."). Employing that liberal rule of construction, we conclude that Skandia "contract[ed] to insure any person, property, or risk located within this territory at the time of contracting," 5 V.I.C. § 4903(a)(6), when it allegedly entered into the cut-through endorsement agreement at issue. The endorsement specifically provides that upon the occurrence of a condition, the insolvency of Commonwealth, Skandia "shall pay directly to the named insured . . . 100% of any loss payable in accordance with the terms and conditions of the original policy of insurance . . . ." In sum, the endorsement allegedly signed by Skandia was a contingent contract to insure a business located in the Virgin Islands.

■ ■ This Court's exercise of adjudicatory authority in this matter is also consonant with the due process clause. Due process requires that a defendant be sued only where he has such minimum contacts with the forum that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Due process limitations protect defendants from the inconvenience of litigating in an unconnected jurisdiction, as well as insure that state (or territorial) tribunals do not surpass the limits of their sovereignty. World-Wide Volkswagen v. Woodson, 444 U.S. 286, 291–92 (1980).

■ In order to determine whether the due process requirements are met, several factors are balanced. "The relevant considerations include the interest of the forum in resolving the dispute, the interest of the plaintiff in obtaining relief at the particular forum, the pertinent contacts of the defendant with the forum, and the burden placed on the defendant in having to come to the forum to defend." Boyce Plumbing, supra, slip op. at 6. See also World-Wide Volkswagen, supra.

Applying the aforesaid test to the facts of the instant cause, we find that the plaintiffs and the intervenor have a strong interest in bringing this suit in the Virgin Islands as they are all Virgin Islands residents. The most convenient place for them to litigate their claims is in a territorial tribunal.

The Virgin Islands has a vigorous interest in this law suit. The endorsement at issue was delivered in the Virgin Islands, the premium for the insurance policy was paid by a Virgin Islands resident, and the property insured is located in the Virgin Islands. As the U.S. Supreme Court has stated:

147

It cannot be denied that [the Virgin Islands] has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant state in order to hold it legally accountable.

McGee v. International Life Insurance Co., 355 U.S. 220, 223 (1957).

Next we will consider Skandia's contacts with this territory. It has not been established that Skandia has any systematic or continuous links with the Virgin Islands. Nevertheless, the Court finds that there is an adequate nexus between the defendant and the Virgin Islands because it is alleged that Skandia availed itself of the privilege of conducting a business transaction relating to the Virgin Islands. See Hanson v. Denckla, 357 U.S. 235, 253 (1958). It is alleged that the defendant voluntarily agreed to insure property in the Virgin Islands, upon the happening of a contingency, for a sum of money. "The defendant should have realized that it would be responsible for the consequences of its actions and thus could be subject to suit in this forum if its services proved unsatisfactory." Godfrey v. International Moving Consultants, Inc., 1980 St. T. Supp. 498, 509 (D.V.I. Dec. 13, 1980). In short, the defendant's contacts with the Virgin Islands are sufficient. "[T]he Constitution does not require that trial be held in the state which has the 'best contacts' with the defendant." World-Wide Volkswagen, supra, at 301 (Brennan, J., dissenting).

Turning to the final factor, Skandia will not be subjected to an undue burden by having to defend in the Virgin Islands. Skandia is a large corporation which is presumably possessed of the wherewithal to travel to the Virgin Islands to defend its interests. Although it may be inconvenient for Skandia to litigate here, such inconvenience does not amount to a denial of due process. See McGee, supra at 224. Skandia has alleged no special hardship which would constitutionally merit especial consideration of its interests. See World-Wide Volkswagen, supra, at 301 (Brennan, J., dissenting). Therefore, the exercise of jurisdiction over Skandia is constitutionally permissible.

## IV. *Subject Matter Jurisdiction*

Skandia's third attack is that this Court lacks subject matter jurisdiction over the claims of the plaintiffs and the intervenor, Fed. R. Civ. P. 12(b)(1). This assertion is based on the fact that

Commonwealth is insolvent and is being liquidated pursuant to the laws of Puerto Rico. Skandia contends that the Puerto Rican tribunal overseeing the liquidation of Commonwealth is the only court in which it is appropriate for the plaintiffs and intervenor to litigate their claims under the insurance policy and endorsement at issue. Even if such contention was valid, this Court would not be deprived of subject matter jurisdiction because our jurisdiction is very broad. As the United States Court of Appeals for the Third Circuit has stated;

> In effect, appellants challenge the relationship of the forum to the cause of action. The relationship vel non may be relevant to questions of personal jurisdiction, choice of law, and forum non conveniens, but is [sic] not relevant to the issue of subject matter jurisdiction . . . . As a court of general original jurisdiction the subject matter jurisdiction of the District Court is limited only by the terms of the Revised Organic Act. *The only subject matter limitation contained in that Act concerns cases as to which exclusive jurisdiction has been conferred on the territorial court.*[4]

Carty, supra, slip op. at 15 (emphasis added). The Territorial Court of the Virgin Islands does not have exclusive jurisdiction over this cause and therefore the subject matter is within the province of this Court.

## V. *Abstention*

Another argument raised is that the principle of abstention requires dismissal of this case. We find that abstention by definition is inapplicable.

██ ██ Abstention is a doctrine which permits a federal court to relinquish jurisdiction when required "to avoid needless conflict

---

[4] Section 22 of the Revised Organic Act of 1954, as amended, provides the following in pertinent part:

"The District Court of the Virgin Islands shall have the jurisdiction of a district court and a bankruptcy court of the United States in all causes arising under the Constitution, treaties and laws of the United States, regardless of the sum or value of the matter in controversy. It shall have general original jurisdiction in all other causes in the Virgin Islands, exclusive jurisdiction over which is not conferred by this Act upon the inferior courts of the Virgin Islands . . .".

Section 23 of the Revised Organic Act of 1954, as amended, states:

"The inferior courts now or hereafter established by local law shall have exclusive original jurisdiction of all civil actions wherein the matter in controversy does not exceed the sum or value of $500, exclusive of interest and costs, all criminal cases wherein the maximum punishment which may be imposed does not exceed a fine of $100 or imprisonment for six months, or both, and all violations of police and executive regulations . . .".

with the administration by a state of its own affairs." Black's Law Dictionary 9 (5th ed. 1979). The rationale of abstention has been explained by the Supreme Court.

[The] doctrine of abstention [is] appropriate to our federal system . . . [as] the federal courts, "exercising a wise discretion," restrain their authority because of "scrupulous regard for the rightful independence of the state governments" and for the smooth working of the federal judiciary. This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction of those powers.

Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 501 (1941). In sum, abstention furthers the cause of state sovereignty by checking federal judicial power.

 The principles of abstention do not apply in this cause because we are not sitting as a *federal court*. We are here exercising our adjudicatory power over a contract dispute because we are a local tribunal of general original jurisdiction, not because of our grant of federal jurisdiction. See note 4, supra. The special nature of our Court was succinctly explained in Carty, supra, slip op. at 13.

[I]n contrast to most federal courts, the District Court of the Virgin Islands is not a court of limited jurisdiction. It is not a United States District Court established under Article III of the United States Constitution but instead is a creation of Congress pursuant to Article IV's grant of congressional power to govern the territories of the United States. Under the Revised Organic Act, Congress has given to the District Court of the Virgin Islands . . . general original jurisdiction . . . . In that sense, it is more like a state court of general jurisdiction than a United States district court.

## VI. *Comity*

Skandia further alleges that comity dictates that this Court either dismiss or stay this case. We conclude it is inappropriate to apply the doctrine of comity.

 Judicial comity is defined as the "principle in accordance with which the courts of one state or jurisdiction will give effect to the laws and judicial decisions of another, not as a matter of obligation, but out of deference and respect." Black's Law Dictionary 242 (5th ed. 1979). The rationale of comity is founded on "mutual inter-

150

est, conscience and moral necessity to do justice in order that justice may be done in return." Nowell v. Nowell, 408 S.W.2d 550, 553 (Civ. App. Tex. 1966). The application of comity is not a matter of right, but rests in the sound discretion of the court.

Skandia contends that comity should be utilized to give effect to the decisions of the courts of Puerto Rico on the issue of the validity of Skandia's endorsements to Commonwealth policies, even though such decisions are not binding. The basis for the foregoing assertion is Skandia's argument that Puerto Rican law governs this suit. Skandia then concludes that because a definitive ruling on the aforesaid issue has not been rendered in Puerto Rico, as a case is now pending in the Supreme Court of Puerto Rico,[5] this action should either be dismissed or stayed until the Puerto Rican high court rules. We disagree.

First, it is clear that dismissal is not warranted because the plaintiffs and intervenor are not parties to the suit pending before the Supreme Court of Puerto Rico. Second, we find that a stay should not be granted because the decisions of the courts of Puerto Rico are not relevant to this action, as Virgin Islands law applies.

The Restatement (Second) of Conflict of Laws § 193 (1971)[6] sets forth the relevant choice of law principles:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

The ratio legis for the rule of § 193 is the following:

> [L]ocation has an intimate bearing upon the risk's nature and extent and is a factor upon which the terms and conditions of the policy will frequently depend . . . . And it can often be assumed that the parties, to the extent that they thought about the matter at all, would expect that the local law of a state

[5] Warranty Association of Insurance of All Kinds v. Commonwealth Insurance Co. No. R-80-330 to 334 (Sup. Ct. P. R.). Briefs were submitted in that action in March 1981.

[6] The restatements of the law approved by the American Law Institute are the "rules of decision" in the courts of the Virgin Islands absent contrary local laws. 1 V.I.C. § 4.

where the risk is to be principally located would be applied to determine many of the issues arising under the contract. Likewise, the state where the insured risk will be principally located during the term of the policy has a natural interest in the determination of issues arising under the insurance contract.

Restatement (Second) of Conflict of Laws § 193 comment c (1971).

The precepts of § 193 dictate that the "local law" of the Virgin Islands[7] governs this dispute over a cut-through endorsement. The endorsement was "attached to and forming" a part of a casualty insurance policy which insured a business located in the Virgin Islands. Further, there is no other state which has a more significant relationship to the contract and parties than the forum of the insured risk. The insurance contract was issued in the Virgin Islands and the insured is a Virgin Islands resident. The only connection Puerto Rico has to the endorsement is the citizenship of Commonwealth. However, Commonwealth is not a party to this lawsuit, nor are any claims between Commonwealth and the parties at issue. This cause is a dispute between Virgin Islands residents and a Swedish insurance company.

▬ Our holding that Virgin Islands law applies also comports with the policies expressed by our Legislature regarding choice-of-law conflicts. Our law favors the application of Virgin Islands law to insurance contracts "delivered or issued for delivery in this territory and covering subjects located, resident, or to be performed in this territory" because it prohibits the parties from expressly choosing to have the agreement "construed according to the laws of any other territory, state or country." 22 V.I.C. § 820(a)(1).

### VII. *Failure to Join Necessary Party*

Another plaint asserted is that the plaintiffs and intervenor have failed to join a Fed. R. Civ. P. 19 "necessary party", the Insurance Commissioner for the Commonwealth of Puerto Rico—as the Receiver-Liquidator of Commonwealth (hereinafter "Insurance Commissioner"), Fed. R. Civ. P. 12(b)(7). Skandia contends that the Insurance Commissioner is a necessary party because "he claims an interest relating to the subject of the action and is so situated that

---

[7] The term "local law" of the Virgin Islands, as it is used in § 193, is defined as follows: "the reference is to the 'local law' of the state of the applicable law and not to that state's 'law,' which means the totality of its law including its choice-of-law rules." Restatement (Second) of Conflict of Laws § 193 comment g (1971). The "choice-of-law rules" in the Virgin Islands are those of the Restatement (Second) of Conflict of Laws. See note 6, supra.

the disposition of the action in his absence may ... subject [Skandia] to a substantial risk of incurring. double, multiple or otherwise inconsistent obligations by reason of his claimed interest." Fed. R. Civ. P. 19(a)(2)(ii). Skandia argues that there is a "substantial risk" of its incurring duplicate liability, as it could be found to be liabie under the terms of the endorsement to the plaintiffs and/or intervenor in this action, and also could be found liable to the Insurance Commissioner, as the representative of Commonwealth in liquidation, in another action.

 We conclude that the Insurance Commissioner is not a necessary party because Skandia has not shown that he has "an interest relating to the subject of the action," within the meaning of Fed. R. Civ. P. 19(a). This litigation concerns the alleged duties and liabilities of Skandia to the intervenor (and through the intervenor to the plaintiffs) which were incurred by virtue of the cut-through endorsement. Our task is to determine whether the intervenor and the plaintiffs have any independent rights against Skandia under Virgin Islands law. We are not adjudicating the issue of whether the Insurance Commissioner has any claims against Skandia under the laws of Puerto Rico. Nor are we resolving any claims between the Insurance Commissioner and the intervenor and/or the plaintiffs. In sum, as this suit is of no import to the Insurance Commissioner, he is not necessary. As one court has stated:

> There are many adjudicated cases in which expressions are made with respect to the tests used to determine whether an absent party is a necessary party or an indispensable party. From these authorities *it appears that the absent party must be interested in the controversy.* (Emphasis added.)

State of Washington v. United States, 87 F.2d 421, 427 (9th Cir. 1936), quoted in 3A Moore's Federal Practice ¶19.07[1] at 19-117 (1982).

## VIII. *Failure To State a Claim*

Defendant's final attack is that both the intervenor and the plaintiffs have failed to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(b)(6). Defendant proffers three reasons why valid claims have not been alleged.

Firstly, it argues that the cut-through endorsement at issue does not create a valid obligation under the laws of Puerto Rico. That contention is irrelevant as Virgin Islands law applies to this action.

Secondly, it contends that the cut-through endorsement is invalid because the intervenor did not pay an additional premium as consideration for the cut-through endorsement. Skandia argues that the failure to pay an additional premium renders the endorsement invalid under Puerto Rican law. Such an argument is not persuasive as it has not been factually established whether or not an additional premium was paid and because Puerto Rican law is inapplicable.

Thirdly, Skandia argues that this suit is barred because the complaint and the complaint in intervention were not filed within one year after the "inception of the loss" as required by the insurance policy between Commonwealth and Sturm. The relevant clause is as follows:

> *Suit.* No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within twelve months next after inception of the loss.

Skandia states that this clause is applicable to its alleged obligations under the cut-through endorsement because the endorsement specifically provides that Skandia's duty to the insured is to pay "100% of any loss payable in accordance with the terms and conditions of the original policy of insurance."

 At this juncture we are unable to resolve the question of whether the limitation of action clause bars this suit because material issues of fact remain regarding the meaning of that clause. For example, the term "inception of loss" is unclear on its face.[8] The term could mean the date the Carsons suffered flood damage to their property, the date judgment was entered against Sturm in Carson v. Sturm, supra, the date on which a right to maintain an action on the cut-through endorsement accrued, or some other date. Similarly, there is a question as to whether the time bar for "recov-

---

[8] See, e.g., 18 Couch on Insurance 2d § 75:88, which states the following in pertinent part at 769:

"Some policies provide that the action must be brought within a specified time after the happening of the loss, or after the loss shall occur or contain provisions of similar import, and *questions arise as to the proper construction of provisions of this kind as to when an action must be brought in order to conform thereto.* For example, a provision limiting the time for suit to a specified period 'after the loss shall occur' has been interpreted as meaning that computation of the limitation period commences when the right to maintain an action on the policy has accrued, rather than from the date of the event causing the loss, such as the date of the fire." (Emphasis added.)

ery of any claim" includes a cause for an alleged breach of the duty of good faith and fair dealing. Other provisions in the insurance policy may shed light on the meaning of the limitation of action clause and so may the parties' intent regarding the meaning of the clause. See, e.g., Lockhart v. Holiday Homes of St. John, Inc., No. 82-3032 (3rd Cir. May 24, 1982). Therefore, this question of contract interpretation is left for trial.[9]

For all the foregoing reasons, the defendant's motion to dismiss was denied by our May 26, 1982, Order.

---

[9] Since we have not ruled on the import of the limitation of action clause, we also leave unresolved the question of whether the clause violates the provisions of 22 V.I.C. § 820(a)(3). That section provides that a clause in an insurance policy is void if it—

"limits [the] right of action against the insurer to a period of less than one year from the time when the cause of action accrues in connection with all insurances other than property and marine and transportation insurances. In contracts of property insurance, or of marine and transportation insurance, such limitation shall not be to a period of less than one year from the date of the loss."