**ROBERT SPINK and VIVIAN SPINK, Plaintiffs**

**v.**

**GENERAL ACCIDENT INSURANCE COMPANY OF PUERTO RICO, LTD., MANGROVE MARINE CENTER, INC., LEVETTE RUAN, and CARMEN RUAN, Defendants**

Civ. No. 1998-042

District Court of the Virgin Islands

Div. of St. Thomas and St. John

February 11, 1999

JAMES M. DERR, ESQ., St. Thomas, U.S.V.I., *for plaintiffs*

FRANKLIN G. QUOW, ESQ., St. Thomas, U.S.V.I., *for defendants*

MOORE, *Judge*

## MEMORANDUM

This matter remains before the Court on plaintiffs Robert and Vivian Spink's ["Spinks"] motion for summary judgment. As mortgagees of a property insured by defendant General Accident Insurance Company of Puerto Rico, Ltd. ["General Accident"], the Spinks seek judgment in the amount of $114,731 for insurance proceeds that they contend General Accident erroneously disbursed to the defendant mortgagor, Mangrove Marine Center, Inc. ["MMC"], and defendant guarantors of the mortgage note, Levette and Carmen Ruan ["Ruans"].[1] For the reasons set forth below, the Court will grant the Spinks' motion for summary judgment.[2]

On December 29, 1989, the Spinks sold their fee simple title to Parcels 29 and 35, Estate Nadir, No. 2 Red Hook Quarter, St. Thomas to MMC, a Virgin Islands corporation. The Spinks took back a $300,000 note and mortgage from MMC, which Levette and Carmen Ruan personally guaranteed as President and Secretary of MMC, respectively. As obligated by the mortgage, MMC obtained an insurance policy from General Accident providing coverage for casualty losses, including loss from windstorm.

MMC's policy covers the period from February 10, 1995, to February 10, 1996, and identifies the Spinks as loss payees in their capacity as mortgagees of the property. In addition, it stipulates that "no suit shall be brought on this policy unless the insured . . . has commenced the suit within one year after the loss occurs." (Pl.'s Mot. for Summ. J., Ex. A, at 1.)

On September 15 and 16, 1995, Hurricane Marilyn damaged buildings located on the mortgaged property. MMC promptly presented a claim to General Accident. Although MMC's policy already identified the Spinks as loss payees; General Accident's authorized representative in St. Thomas wrote to the company on March 7, 1996, to remind it of the plaintiffs' interest in the policy. The Spinks and their attorney later did the same.

---

[1] Although the plaintiffs style their suit as an "action for breach of contract, negligence, [or] unjust enrichment," they have alleged only the elements of a contract or quasi-contract action. Their motion will be reviewed solely on those grounds.

[2] At a hearing on September 4, 1998, the Court denied General Accident's cross-motion for summary judgment pursuant to this Court's ruling in *Carson v. Scandia Insurance Co.*, 19 V.I. 138 (D.V.I. 1982).

General Accident informed the Spinks on September 3, 1997, that it had paid $114,731.00 to MMC for loss to the insured property. General Accident had made the settlement check payable only to MMC. The Spinks filed this action on February 18, 1998.

## DISCUSSION

■ Although the District Court of the Virgin Islands is not a United States district court established under Article III of the Constitution, Congress nevertheless has seen fit to grant it diversity jurisdiction over plaintiffs' claim under 28 U.S.C. § 1331.[3] When an Article III United States district court exercises its limited diversity jurisdiction, it must apply the substantive law of that forum state or territory,[4] or try to predict how the state's highest court would resolve the issue if the substantive law is unsettled.[5] This Court need not predict local law, however, because it is vested with the authority to decide novel questions as a local trial court.[6]

---

[3] Under Section 22 of the Revised Organic Act of 1954, 48 U.S.C. § 1612, the Court has general civil jurisdiction equivalent to that of a United States district court. The complete Revised Organic Act of 1954 is located at 48 U.S.C. §§ 1541-1645 (1994), reprinted in V.I. CODE ANN. 73-177, Historical Documents (1995 & Supp. 1998) [hereinafter "REV. ORG. ACT"] (preceding Title One of Virgin Islands Code).

[4] See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 82 L. Ed. 1188, 58 S. Ct. 817 (1938).

[5] See Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 18 L. Ed. 2d 886, 87 S. Ct. 1776 (1967); Borman v. Raymark Indus., Inc., 960 F.2d 327, 331 (3d Cir. 1992). The Third Circuit Court of Appeals recently observed that "when state law is unclear, efforts by federal courts to 'predict' how a state's highest court would rule 'raise judicial federalism concerns.'" Michaels v. New Jersey, 150 F.3d 257, 259 (3d Cir. 1998) (quoting Bradford R. Clark, Ascertaining the Laws of the Several States: Positivism and Judicial Federalism After Erie, 145 U. PA. L. REV. 1459, 1564 (1997)). Assuming that federalism principles apply in a territory where the United States is the sole sovereign, this Court's power to exercise federal jurisdiction and decide territorial law creates no federalism problem because this Court is not yet an Article III United States District Court.

[6] See 4 V.I.C. § 2 ("The judicial power of the Territory is vested in . . . the 'District Court of the Virgin Islands,' and in a court of local jurisdiction to be designated the 'Territorial Court of the Virgin Islands.'"); Government of the Virgin Islands v. Virgin Islands Paving, Inc., 714 F.2d 283, 285-86 (3d Cir. 1983) ("When . . . suit is brought in the District Court of the Virgin Islands to enforce provisions of Virgin Islands law, that court sits essentially as a local court."); United States v. George, 625 F.2d 1081, 1088 (3d Cir. 1980) (observing that District Court "is a territorial court, indeed, the chief court of the territory"); In re Jaritz Indus., 207 B.R. 451, 466, 36 V.I. 225, 252-253 (D.V.I. 1997) ("the district court . . . is classified as territorial and institutionally is not federal in nature"), rev'd on other grounds, 151 F.3d 93 (3d Cir. 1998). The District Court of the Virgin Islands also acts as a local appellate court. See REV. ORG. ACT § 23A(b), 48 U.S.C. § 1613a(b)

General Accident asserts that the one-year limitation clause for suits on its policy with MMC bars the Spinks' claim. Whether the general limitations clause for suits against the insurer by the mortgagor bars a mortgagee's claim is an issue of first impression in this jurisdiction. The Court therefore will decide this question by applying "the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States." *See* 1 V.I.C. § 4 (identifying rules of decision "in the absence of local laws to the contrary").

■ Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). Once the moving party properly supports its motion for summary judgment, the non-moving party must establish a genuine issue of material fact in order to preclude a grant of summary judgment. *See* FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). Since the parties agree that there are no issues of fact, and the Spinks' motion presents only the legal question of the proper construction of unambiguous contractual terms, this matter is ripe for summary judgment. *See Tamarind Resort Assocs. v. Government of the Virgin Islands*, 138 F.3d 107, 110-11 (3d Cir. 1998).

■ Without question, the Spinks were entitled to insurance proceeds for the loss that Hurricane Marilyn inflicted on the mortgaged property. The Restatement (Third) of Property, which provides the applicable rule of law, states that

> [u]nless a different disposition is provided in the mortgage, the mortgagee has a right to . . . funds paid on account of loss or damage to the mortgaged real estate, to the extent that the mortgagee's security has been impaired by the loss or damage, . . . [including] the proceeds paid by a casualty insurer due to the occurrence of

---

("appeals to the District Court of the Virgin Islands . . . shall be heard and determined by an appellate division of the court").

an insured loss to the real estate, if the mortgagor promised the mortgagee, in the mortgage or otherwise, to purchase the insurance.

RESTATEMENT (THIRD) OF PROPERTY § 4.7(a)(1) (1997). Since the Ruans promised the Spinks that they would insure the mortgaged property, and Hurricane Marilyn impaired the Spinks' security by driving the value of the property below the outstanding balance on the mortgage, the plaintiffs are entitled to the insurance proceeds because the mortgage does not provide otherwise. Further, the Special Multi-Peril Conditions and Definitions section of the policy provides, "[l]oss to buildings shall be payable to the named mortgagee as interest may appear." (Pl.'s Mem. of P.& A. at 2.) As the named mortgagees, the Spinks should have received the insurance proceeds.

General Accident does not dispute this conclusion. Rather, it asserts that the suit limitations provision present in MMC's policy bars the Spinks' claim. That clause states that "no suit shall be brought on this policy unless the insured . . . has commenced the suit within one year after the loss occurs." (Pl.'s Mot. for Summ. J., Ex. A, at 1.) Such one-year suit limitations clauses are generally enforceable in the Virgin Islands. *See* 22 V.I.C. § 820(a)(3) ("In contracts of property insurance . . . such limitation shall not be [for] a period of less than one year from the date of the loss.").

The suit limitations provision applies to the Spinks, even though MMC's policy designates them as loss payees, not 'insureds.' At first glance, the plaintiffs appear to be third-party creditor beneficiaries whose claim to insurance proceeds depends on the mortgagor's own right to payment. *See* COUCH ON INSURANCE 3D § 65:22 (1996 & Supp. 1998) ("[A] mortgage loss-payable clause . . . does not make the mortgagee an assignee of the policy, but merely an appointee to collect the insurance; consequently, the mortgagee must claim in the right of the insured.") Logically, any limit on MMC's right to sue the insurer would apply to its third-party beneficiaries as well.

Closer scrutiny of MMC's policy reveals that the Spinks are not third-party beneficiaries. The policy contains the following proviso, commonly termed a "standard" mortgage clause:

400

As it applies to the interest of any mortgagee designated in the Declarations, this insurance shall not be affected by any of the following:

(a) any act or neglect of the mortgagor or owner of the described buildings;

b) any foreclosure or other proceedings or notice of sale relating to the property;

. . . .

(d) occupancy of the premises for purposes more hazardous than are permitted by this policy;

. . . .

When the Company shall pay the mortgagee any sum for loss under this policy . . . the Company shall, to the extent of such payment, be thereupon legally subrogated to all of the rights of the mortgagee to whom such payment shall have been made, under the mortgage debt.

(Pl.'s Mem. of P. & A. at 5.) As explained by one court, "the standard clause expressly protects the mortgagee against mortgagor's misdeeds . . . and subrogates the Company to the mortgagee's rights versus the mortgagor when payment is made to the mortgagee." *Conner v. Northwestern Nat'l Cas. Co.*, 774 P.2d 1055, 1056 (Okla. 1989) (citation omitted). The prevailing view among American jurists and commentators is that this provision creates a separate contract between the mortgagee and the insurance company, dissolving the third-party beneficiary relationship between mortgagee and mortgagor by insulating the former's rights from the latter's actions.[7] The Court adopts this view as territorial law under its statutory power to discern and apply "the common law

---

[7] *See* Couch on Insurance 3d §§ 65:9 ("the standard mortgage clause operates as a distinct and separate contract"), 65:32 ("the effect is the same as though the mortgagee had procured a separate policy naming himself . . . as the insured"); *see also Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 395, 81 L. Ed. 1177, 57 S. Ct. 809 (1937) ("The mortgagee clause created a contract of insurance between [the mortgagee] and the company and effected separate insurance upon [its] interest."), *aff'g* 87 F.2d 683, 684 (3d Cir. 1936) (applying Pennsylvania law); *Evans Prods. Co. v. West Am. Ins. Co.*, 736 F.2d 920, 926 (3d Cir. 1984) (Adams, J., dissenting) (addressing issue not reached by majority and acknowledging that, under Pennsylvania law, standard mortgage clause creates discrete contract in favor of mortgagee); *Kimberley & Carpenter, Inc. v. Fireman's Fund Ins. Co.*, 78 F.2d 62, 64 (3d Cir. 1935) (reaching identical conclusion under Delaware law).

as generally understood and applied in the United States." *See* 1 V.I.C. § 4.

■ The Spinks are "insureds" under a separate contract of insurance with General Accident created by the standard mortgage clause. Contrary to the plaintiffs' contention, however, this contract incorporates terms from MMC's policy that do not conflict with the standard clause, such as the suit limitations provision. *See Evans Prods. Co.*, 736 F.2d at 927 ("The mortgagee's protection cannot be nullified or diminished by acts of the mortgagor, but the mortgagee is no more free to ignore the one-year limitations provision than is the mortgagor.") (Adams, J., dissenting) (citations omitted).[8] The plaintiffs need not rely on MMC's rights, but they cannot sleep on their own.

■ According to the policy, the limitations period commences when the insured suffers a "loss." Assuming that the word "loss" refers to the occurrence of the peril insured against rather than the denial of the insured's claim,[9] the insurer must be estopped from enforcing the limitations provision against the Spinks. General Accident recorded the Spinks' stake in the policy as mortgagees well before Hurricane Marilyn struck the Virgin Islands, and was repeatedly reminded of that interest in the hurricane's aftermath. The insurer did not disclose that it had paid MMC in violation of the policy's loss-payable clause until September 3, 1997. Such delay clearly contravened the duties of good faith and fair dealing that

---

[8] *But see United States v. Commercial Union Ins. Cos.*, 821 F.2d 164 (2d Cir. 1987) (construing insurance policy strictly against insurer under Vermont law and concluding that limitations period did not apply to mortgagee because provision applied only to "insured"). This Court rejects the Second Circuit's technical interpretation. The Spinks' right to insurance proceeds sprang from the insurance transaction between MMC and General Accident. In ordinary parlance, the Spinks are "insureds" whose claim was "brought on the policy."

[9] Most courts have held that suit limitation provisions run from the time of property damage, not the date that the insurer denies coverage. *See, e.g., Closser v. Penn Mut. Fire Ins. Co.*, 457 A.2d 1081, 1086 n.6 (Del. 1983) (following majority rule but acknowledging that "there is authority for either of these two results"). Our sister courts in the Third Circuit have split on the issue. *See id.; Peloso v. Hartford Fire Ins. Co.*, 56 N.J. 514, 267 A.2d 498, 501 (N.J. 1970) (adopting minority rule because limitation clause sought to provide insured with twelve month period to commence suit); *Guarantee Trust & Safe Deposit Co. v. Home Mut. Fire Ins. Co.*, 180 Pa. Super. 1, 117 A.2d 824, 827 (Pa. Super. Ct. 1955) (recognizing that statute of limitations barred mortgagee's action to recover on separate insurance contract).

402

General Accident owed to the Spinks. *See* 22 V.I.C. § 2 ("The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters."). General Accident spent nearly two years ignoring the plaintiffs' contractual rights. It cannot now invoke the suit limitations clause of that contract to extinguish their claim. *Accord Bowler v. Fidelity & Cas. Co.*, 53 N.J. 313, 250 A.2d 580 (N.J. 1969) (estopping defendant from pleading limitations clause as defense where insurer failed to pay benefits that were clearly due); *see Closser*, 457 A.2d 1081 at 1086, 56 N.J. 514 (recognizing that limitations provision may not be enforced if insurer led insured to delay suit); *General State Auth. v. Planet Ins. Co.*, 464 Pa. 162, 346 A.2d 265, 268 (Pa. 1975) (same).

## CONCLUSION

The Court will grant specific enforcement of the Spinks' contract under the standard mortgage clause because the suit limitations provision does not bar their otherwise valid claim for insurance proceeds. An Order granting judgment to the plaintiffs in the amount of $114,731 will issue.[10]

ENTERED this 11th day of February, 1999.

---

[10] Upon payment to the plaintiffs, the Spinks' cause of action against MMC and the Ruans for collection of insurance proceeds will subrogate to General Accident.