**PRIME HOSPITALITY CORP., Plaintiff,**

**v.**

**GENERAL STAR INDEMNITY CO.; EMPLOYERS INSURANCE OF WAUSAU; ALLIANZ UNDERWRITERS INSURANCE CO.; UNDERWRITERS AT LLOYD'S OF LONDON; GAN INSURANCE CO. LTD., UK; SIRIUS INTERNATIONAL INSURANCE CORP.; ECCLESIASTICAL INSURANCE OFFICE PLC; WASA INTERNATIONAL (UK) LIMITED INSURANCE CO. LTD.; ZURICH RE (UK) LTD.; LIBERTY MUTUAL INSURANCE CO. (UK) LTD; and WESTCHESTER SURPLUS LINES INSURANCE CO., Defendants**

**GENERAL STAR INDEMNITY CO., Defendant/Cross-Claimant**

**v.**

**UNDERWRITERS AT LLOYD'S OF LONDON; GAN INSURANCE CO. LTD. UK; SIRIUS INTERNATIONAL INS. CORP; ECCLESIASTICAL INS. OFFICE PLC; WASA INTERNATIONAL (UK) INS. CO. LTD.; and ZURICH RE (UK) LTD., Defendants/Cross-Defendants**

Civil No. 1997-91

District Court of the Virgin Islands

Division of St. Thomas and St. John

April 29, 1999

MARIA TANKENSON HODGE, ESQ., St. Thomas, *for General Star Indemnity Co.*

DARYL C. BARNES, ESQ., St. Croix., *for London Insurers*

HERBERT J. BAUMANN, JR., ESQ., Pro Hac Vice, *for London Insurers*

MOORE, *Chief Judge*

## MEMORANDUM

All that remains of this case is a dispute between two excess insurance carriers over the amount one group should have paid to settle the hurricane damage claim of the insured. Ten months after Hurricane Marilyn seriously damaged Frenchman's Reef Hotel on St. Thomas, Hurricane Bertha inflicted a second round of destruction in 1996. At the time of the latter hurricane, the owner of the hotel, Prime Hospitality Corp. ["Prime"], was insured through several insurance companies who participated in the risk at successive levels of coverage in different proportions. Royal Insurance Company ["Royal"] was the prime insurer, providing coverage for the first $2.5 million of loss. General Star Indemnity Company ["GenStar"] reinsured the next layer of $2.5 million, for a total of $5 million, and Employers Insurance of Wausau ["Wausau"] reinsured the next $5 million, for a total of $10 million. The third layer of excess coverage up to $15 million in total

coverage was shared by three insurance groups in differing proportions: GenStar and Allianz Underwriters Insurance Company ["Allianz"] each reinsured one-sixth of this layer and the "London Insurers"[1] reinsured the remaining two-thirds.

Prime filed its proof of loss and Royal promptly paid the policy limits of $2.5 million as the primary insurer. As of June 1997, Prime's claim for the additional property damage done by Bertha was still more than $21 million. When it was unable to settle the rest of the loss, Prime sued its excess insurers, invoking this Court's diversity jurisdiction. See 28 U.S.C. § 1332. During mediation, Prime agreed to settle for an additional $12 million, with GenStar paying $2.5 million, the policy limits of the first excess layer, and Wausau paying the limits of the second layer, $5 million. This left $4.5 million to be paid from the third excess layer, shared $750,000 each by GenStar and Allianz and $3 million by the London Insurers. The mediation stalled, however, because the London Insurers would only agree to pay $2 million of its full respective share of $3 million. When Prime refused to settle separately with GenStar for its share of the last $4.5 million, GenStar paid the additional $1 million by contributing an additional $250,000 as reimbursement for Prime's attorneys' fees plus another $750,000 of the London Insurers' share. GenStar specifically reserved the right to seek contribution from the London Insurers in the settlement agreement. All parties signed the agreement with this reservation, and Prime was paid the full $12 million settlement, including $4.5 million from the third layer of reinsurance.

GenStar filed a cross-claim against the London Insurers to recover the extra $750,000 it claims to have paid on behalf of its co-defendants. The London Insurers have moved for leave to file their own cross-claim against GenStar and to dismiss GenStar's cross-claim for failure to state a claim upon which relief can be granted.

---

[1] Underwriters at Lloyd's of London; Gan Insurance Co. Ltd. UK; Sirius International Ins. Corp; Ecclesiastical Ins. Office Plc; Wasa International (UK) Ins. Co. Ltd.; and Zurich Re (UK) Ltd.

**ANALYSIS**

## Authority of District Court to Decide Local Law

The London Insurers' motions raise issues of the duty of one excess insurer to another in settling the claim of their insured and of equitable subrogation of one excess insurer to another. The local law in the Virgin Islands is murky at best on the applicability of the doctrine of equitable subrogation in general, and non-existent as between excess insurers. The Court thus again discusses its authority to determine novel issues of local law.[2]

■ Although the District Court of the Virgin Islands is not a United States district court established under Article III of the Constitution, Congress nevertheless has granted it the diversity jurisdiction of a true United States district court under 28 U.S.C. § 1331.[3] At the same time, the District Court of the Virgin Islands remains vested with the "judicial power of the Territory" of the Virgin Islands,[4] despite being divested of its original jurisdiction over all local civil and criminal causes of action as of January 1, 1994.[5] In fact, the District Court remains the "chief court of the territory," according to the Court of Appeals for the Third Circuit. *See United States v. George*, 625 F.2d 1081, 1088 (3d Cir. 1980).[6] When acting in a case within its diversity jurisdiction, then, the District

---

[2] *See S&S Services, Inc. v. Rogers*, 35 F. Supp. 2d 459, 1999 WL 27588 at *3-4 (D.V.I. Jan. 14, 1999); *Spink v. Gen. Accident Ins. Co.*, 36 F. Supp. 2d 689, 1999 WL 86823 at *1 (D.V.I. Feb. 11, 1999).

[3] Under Section 22 of the Revised Organic Act of 1954, 48 U.S.C. § 1612, the Court has general civil jurisdiction equivalent to that of a United States district court. The complete Revised Organic Act of 1954 is located at 48 U.S.C. §§ 1541-1645 (1994), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents (1995 & Supp. 1998) [hereinafter "REV. ORG. ACT"] (preceding Title One of Virgin Islands Code).

[4] V.I. CODE ANN. 4, § 2; see REV. ORG. ACT § 21(a), 48 U.S.C. § 1611(a).

[5] *See In Re Jaritz Indus. v. Urice*, 36 V.I. 225, 207 B.R. 451, 460 (D.V.I. 1997), *rev'd on other grounds*, 151 F.3d 93 (3d Cir. 1998).

[6] The Court of Appeals recently has reaffirmed in a series of unreported "table" decisions its 1980 *United States v. George* decision holding that the District Court of the Virgin Islands is the chief court of the Territory. *See United States v. Charles*, 60 F.3d 817 (3d Cir. 1995)(voiding prosecution under section 1503 for influencing or injuring an officer or juror of a Court of the United States), *rev'g* 1994 WL 392480 (D.V.I. May 26, 1994); *United States v. Cruse*, 27 F.3d 559 (3d Cir. 1994)(upholding a dismissal of prosecution premised on section 1503); *see also United States v. Galloway*, 70 F.3d 1257 (3d Cir. 1995)(voiding prosecution for perjury before Court of the United States). For an explanation of table decisions, *see In re Jaritz Industries*, 207 B.R. at 466, n.20.

Court exercises the judicial power of the Virgin Islands in deciding an unresolved question of Virgin Islands law. This Court is not bound under Article III to attempt to divine how a local court would decide the issue. The District Court is a court of the Virgin Islands[7] whose rules of decision are the rules of the common law, including the Restatements of Law:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the **courts of the Virgin Islands** in cases to which they apply, in the absence of local laws to the contrary.

1 V.I.C. § 4 (emphasis added).[8] Both motions touch on issues which are undecided under the local law of the Virgin Islands.

**Motion to Dismiss GenStar's Cross-Claim**

The Court cannot dismiss an action under Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support" of the claims as pled which would entitle the plaintiff to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957). The factual allegations raised in the complaint must be assumed to be true. *See Jenkins v. McKeithen*, 395 U.S. 411, 421, 23 L. Ed. 2d 404, 89 S. Ct. 1843 (1969). Since the motion tests the sufficiency of the complaint, the Court's inquiry is limited to its allegations. *See Pepper-Reed Co. v. McBro Planning & Dev. Co.*, 19 V.I. 534, 564 F. Supp. 569 (D.V.I.

---

[7] Obviously, the Appellate Division of this Court, made up of its two District Court judges and one Territorial Court judge, is a court of the Virgin Islands exercising appellate review of all decisions of the Territorial Court of the Virgin Islands. *See* REV. ORG. ACT § 23A, 48 U.S.C. § 1613a; 4 V.I.C. § 33.

[8] The legislative history of 1 V.I.C. § 4 makes it clear that the reference to common law includes decisional law. *See* Note, 1 V.I.C. § 4, p. 254 (1995) ("As set out herein, the provisions have been rewritten more accurately to express the concept of the Common Law as constituting a body of rules established by precedent, as distinguished from a body of statutory law . . . ."). Thus, courts in the Virgin Islands look first to enactments of the Virgin Islands Legislature, then to the common law as embodied in the Restatements, then to decisions of local courts when no Restatement is on point, and finally to the general common law of the United States.

1983). The complaint should be construed liberally in the plaintiff's favor, giving that party the benefit of all fair inferences which may be drawn from the allegations. *See Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974).

The London Insurers assert that GenStar voluntarily paid $750,000 more than its pro rata share. They argue further that there is no contract between them and GenStar on which to ground any duty to indemnify GenStar for its largesse. GenStar argues that section 81 of the Restatement of Restitution applies in the Virgin Islands, and the Court agrees since there is no local law on point. Section 81 provides:

> Unless otherwise agreed, a person who has discharged more than his proportionate share of a duty owed by himself and another as to which, between the two, neither had a prior duty of performance, is entitled to contribution from the other, except where the payor is barred by the wrongful nature of his conduct.

RESTATEMENT OF RESTITUTION, § 81 (emphasis added) GenStar further relies on *Continental Gas Co. v. Canadian Universal Ins. Co.*, 605 F.2d 1340 (5th Cir. 1979) (enforcing stipulation where insurers expressly agreed to litigate the proportional share to be born by each) and *Royal Indemnity Co. v. Aetna Casualty & Surety Co.*, 193 Neb. 752, 229 N.W.2d 183 (Neb. 1973) (applying equitable subrogation to insurers sharing a common duty).

The London Insurers counter that neither section 81 nor these two cases govern the facts of their dispute because the fourth-level insurers did not share a common duty. They also rely on

> the general rule that if each of several insurers contracts to pay such proportion of the loss as results from the destruction of the thing insured as the amount insured by such insurer bears to the whole insurance effected on the thing insured, none of such insurers has any right to contribution from the other, nor will the payment of the whole loss by any of them discharge the liability of the

others. This is because in such a case the contracts are several, and independent of each other.

*Employers Casualty Co. v. Transport Insurance Co.*, 444 S.W.2d 606, 608 (Tex. 1969) (citing 29 Am. Jur. *Insurance* § 1333 and the authorities cited therein).[9] The London Insurers moreover assert that even where there is a common and shared duty,

> [t]o entitle one co-obligor to contribution from the others, it is the general rule that the payment made by him must have been compulsory in the sense that he must have been under legal obligation to pay. A voluntary payment which he is not under legal obligation to make does not give a right of action against his co-obligors for contribution; but it is sufficient if the payment is made under a legal and fixed obligation. A payment is deemed in law to be compulsory when the party making it cannot legally resist it. . . .

*Id.* at 609-10 (quoting 18 Am. Jur. *Contribution* § 11.)

■ The Court does not have sufficient undisputed facts before it to determine whether the relationship among the parties created the kind of "a duty" contemplated by section 81 and required for contribution. The parties also dispute the nature of the $750,000 payment. The London Insurers characterize it as "voluntarily paid," whereas GenStar contends that it was "forced to make the contribution to effect the settlement." These factual disputes preclude a Rule 12(b)(6) dismissal. Accordingly, the motion to dismiss GenStar's cross-claim will be denied.

## Motion for Leave to File Cross-claim

The London Insurers seek leave to file a two-count cross-claim.

---

[9] The London Insurers rely heavily on the holding in *Keystone Shipping Co. v. Home Insurance Co.*, 840 F.2d 181, 182-83 (3d Cir. 1988) ("A co-insurer like Home is not obliged to accept other co-insurers' evaluations of litigating prospects so long as its own evaluation is not unreasonably low and it has acted in good faith in advancing and adhering to that evaluation . . . .") Their reliance on this decision as somehow binding on this Court because it is an opinion by a panel of the United States Court of Appeals for the Third Circuit is totally misplaced. First, it deals with the local law of another jurisdiction. Second, it is merely the Court of Appeals' best reasoned guess how the Supreme Court of Pennsylvania would decide the issue.

The first count asserts a right to equitable subrogation of Prime's cause of action against GenStar for breach of its implied covenant of good faith and fair dealing. The London Insurers assert that GenStar "effectively became the primary carrier for the adjustment of the loss" once the actual prime insurer, Royal, paid its policy limits. (Reply Mem. to Mot. for Leave at 2.) The London Insurers reiterate Prime's claims against GenStar for not attempting to adjust Prime's claim or negotiate a fair and equitable settlement and claim that they sustained damages "as a result of GenStar's breach of its good faith duty to pay its policy limits at the first excess layer [$2,500,000] to PRIME." (London Insurers' Cross-Claim, Count I at ¶¶ 18, 19.) The London Insurers seek recovery from GenStar of the excess funds they were "forced" to pay to resolve the litigation plus attorneys fees and costs of defense of Prime's action. (*See id.*)

■ Count I of the London Insurers' cross-claim will not be allowed because it does not state a claim upon which relief can be granted, whether or not a cause of action for equitable subrogation is available in the Virgin Islands to an excess carrier against the prime insurer.[10] The undisputed facts accepted and asserted by both sides conclusively demonstrate that payment of the full $2.5 million of the first level of excess coverage by GenStar could not have settled Prime's claim. Prime claimed over $21 million and the settlement included not only GenStar's $2.5 million but also all of Wausau's $5 million second level excess coverage. Thus, it was

---

[10] To the extent that its applicability is unclear, the Court adopts the doctrine of equitable subrogation as the law of the Virgin Islands. The essence of subrogation can be summed up as follows:

> Subrogation has been equated to and interchanged with the word substitution and the basic idea is that of substituting the insurance carrier for the insured in the insured's action against a third party. Subrogation is an equitable doctrine and is applicable whenever a debt or obligation is paid from the funds of one person although primarily payable from the funds of another.

*Anderson v. Borough of Greenville*, 442 Pa. 11, 16, 273 A.2d 512, 514 (1971). Moreover, equitable subrogation can apply to the relationship between the prime and excess insurers. *See, e.g.*, *Continental Casualty Co. v. Reserve Ins. Co.*, 307 Minn. 5, 8-9, 238 N.W.2d 862 (1976) ("If the insured purchases excess coverage, he in effect substitutes an excess insurer for himself. It follows that the excess insurer should assume the rights as well as the obligations of the insured in that position.").

impossible for "GenStar's breach of its good faith duty to pay its policy limits at the first excess layer [$2,500,000] to PRIME," as alleged by the London Insurers, to have "forced" them to pay extra funds to resolve the litigation. (See London Insurers' Cross-Claim, Count I at ¶ 18.)

Moreover, the London Insurers agreed that a settlement of $11 million was reasonable, i.e., they agreed to pay $2 million of their share of the $4.5 million out of the third level of excess coverage. After agreeing to Prime's release of GenStar from all liability, the London Insurers simply do not have the legal option of seeking to substitute themselves to Prime's bad faith suit against GenStar which they agreed to settle with Prime and agreed to be dismissed with prejudice.

■ In Count II of their proposed cross-claim, the London Insurers assert the right to bring an independent cause of action on the theory that GenStar, acting as the prime insurer, breached some separate, contractual duty to the London Insurers, as excess insurer, to act in good faith in settling this claim. It is undecided in the Virgin Islands whether the duty of an excess insurer to its insured to negotiate the settlement of a claim in good faith runs to the benefit of one of its co-excess insurers. There is no statutory or decisional basis in the Virgin Islands for such a cause of action, nor is it provided for in the Restatements. When the Court looks to the law of other jurisdictions, it finds that so few jurisdictions have allowed such a direct cause of action between co-insurers that it cannot be considered a part of the common law "as generally understood and applied in the United States." 1 V.I.C. § 4. *See, e.g.,* *Twin City Fire Ins. Co. v. Country Mutual Ins. Co.,* 23 F.3d 1175, 1178 (7th Cir. 1994) ("The overwhelming majority of American cases describe the duty that a primary insurer owes an excess insurer as one derivative of the primary insurer's duty to the insured."). Accordingly, the London Insurers will not be permitted to assert that GenStar, acting as the primary insurer, has direct liability to the London Insurers as excess insurers.

### CONCLUSION

The London Insurers' motions to dismiss GenStar's cross-claim and for leave to file a cross-claim will be denied.

## ORDER

For the reasons discussed in the foregoing Memorandum, it is hereby

ORDERED that the motion of the London Insurers to file a cross-claim is DENIED. It is further

ORDERED that the motion of the London Insurers to dismiss GenStar's cross-claim is DENIED.

ENTERED this 29th day of April, 1999.