Thurston v. Koch.

---

## THURSTON v. KOCH.

### Double insurance.

In cases of double insurance, the assured may, at his election, sue either set of underwriters, and recover a full indemnity;[1] and if there be a recovery against one, the others are bound to contribute ratably, in proportion to the amount insured.[2]

THIS cause came before the court on the following case stated by the counsel, *Condy*, for the plaintiff, and *Ingersoll*, for the defendant.

" On the 13th of October 1796, William I. Vredenburgh, of the city of New York, merchant, caused himself to be insured, at the city of New York, in a certain policy of insurance, which was subscribed by the plaintiff, in the sum of $14,500, upon any kind of goods and merchandise, laden or to be laden on board the brigantine Nancy, Captain King, master, lost or not lost, at and from any port and ports in the West Indies, and at and from thence to New York, and there safely landed, beginning the adventure upon the said goods and merchandises, from the lading thereof on board the said vessel, at the West Indies.

" On the 17th of October 1796, the said William I. Vredenburgh, by Jacob Sperry & Co., his agents, caused himself to be insured, at the city of Philadelphia, in a certain other policy of insurance, which was subscribed by the defendant, in the sum of $1300, with other underwriters, in the whole amounting to $12,000, upon all kinds of lawful goods and merchandises, lost or not lost, laden or to be laden on *board the said brigantine Nancy, at and from Cape Nichola Mole, to any ports and places [*349 in the West Indies, to trade, at and from either of them, to New York, beginning the adventure from and immediately following the loading thereof on board the said brigantine, at Cape Nichola Mole, and so to continue, until safely landed at any ports and places in the West Indies, and at

---

[1] Potter *v.* Marine Ins. Co., 2 Mason 475; Craig *v.* Murgatroyd, 4 Yeates 161. This has since been remedied by the introduction into policies of the clause respecting prior insurances. GIBSON, J., in Peters *v.* Delaware Ins. Co., 5 S. & R. 481. The rule is the same in cases of five insurance. Lucas *v.* Jefferson Ins. Co., 6 Cow. 635.

[2] In this, the court adopted the English rule, contrary to that adopted in this country, that the other insurers should contribute ratably, and not according to priority of contract. Stacey *v.* Franklin Fire Ins. Co., 2 W. & S. 542–3, ROGERS, J. But to constitute a case of double insurance, there must be the same risk, and for the same person. Warder *v.* Horton, 4 Binn. 529; Columbian Ins. Co. *v.* Lynch, 11 Johns. 233. And see Peters *v.* Delaware Ins. Co., 5 S. & R. 473; Wells *v.* Philadelphia Ins. Co., 9 Id. 103; Sloat *v.* Royal Ins. Co., 49 Penn. St. 14.

New York aforesaid. The premium demanded upon this policy, was ten per cent., and was duly paid by the said Jacob Sperry & Co., on behalf of the said William I. Vredenburgh, to the defendant and the other underwriters upon this policy.

"On the 20th of October 1796, the said William I. Vredenburgh caused himself to be insured, at the city of New York, in a certain other policy of insurance, which was subscribed by the New York Insurance Company, for the sum of $2200, upon all kinds of lawful goods and merchandises, lost or not lost, laden or to be laden on board the said brigantine Nancy, at and from any port or ports in the West Indies, to New York, beginning the adventure from the loading thereof on board the said brigantine, at any port or ports in the West Indies, and so to continue, until safely landed at New York, &c.

"On the 12th day of September 1796, the said brigantine Nancy, with the said goods and merchandises so laden, on board, and insured and covered by the said policies as aforesaid, sailed from Cape Nichola Mole, in the West Indies, for St. Marks, likewise in the West Indies, and in the prosecution of the said voyage, from Cape Nichola Mole to St. Marks aforesaid, with her cargo, including the said goods and merchandises, so insured as aforesaid, was captured by a French privateer, and condemned; by which capture, the said goods and merchandises were wholly lost to the insured. Upon this, suits were brought into the supreme court of the state of New York, against the plaintiff, upon the policy by him subscribed, and against the New York Insurance Company, on the policy by them subscribed; in which suits, the insured, the said William I. Vredenburgh, recovered as for a total loss.

"The amount paid by the plaintiff (after the usual deductions) for the loss, was $12,740, with $1783.60 interest, and $418.32 costs. He has likewise paid to the said assured, $1083.60, being the amount of the premium upon the policy subscribed by the defendants (after the deductions allowed in the case of a returned premium), as a consideration for the assignment of the said policy to the plaintiff. The New York Insurance Company have paid to the assured $2156, being the amount of their policy (after the usual deduction in case of loss), with $301.84 interest. . The several sums so paid have completely satisfied the loss, with all the interest and costs.

*350]     *"Question for the opinion of the court. Is the defendant (one of the underwriters, on the Philadelphia policy, of the 17th of October 1796) liable to make any, and if any, what contribution to the plaintiff, upon the loss so paid as aforesaid by him? Or, in other words, is the defendant liable to pay more than the amount of the loss, beyond the sum previously insured? If the court shall be of opinion in the affirmative, then judgment shall be entered for the plaintiff, in such sum as, upon the principles established by the court, shall be found due. But if the court shall be of opinion in the negative, then judgment shall be entered for the defendant."

After argument, the opinion of the court was delivered by the presiding judge, in the following terms:

PATERSON, Justice.—The case before the court is that of a double insurance; and the question is, whether the insurers shall contribute ratably, or

shall pay according to priority of contract, until the insured be satisfied to the amount of his loss. The law on this subject is different in different nations of Europe, owing to the diversity of local ordinances, which have been made to regulate commercial transactions. By the ordinance of one country, the contract is declared to be void, and a forfeiture superadded ; whereas, by the ordinance of other countries, the contract is merely void, without any forfeiture. By the ordinance of Spain, if a policy be signed, on the same day, by several persons, the first signer becomes first responsible, and so on, until the insured receive full satisfaction to the value of his loss ; the posterior insurers being liable only for the deficiency, and that, too, according to the order of priority. But in such case, by the ordinance of France, the several insurers, on the same day, shall contribute ratably to make up the loss ; whereas, by the same ordinance, if the policies bear date on different days, the rate of contribution is rejected, and that of priority established; or, in other words, if the first policy absorb the loss, or amount to the value of the goods insured, the posterior insurers are not liable, but shall withdraw their insurances, after retaining a certain per-centage. The solvency of the first insurer to the full value being assumed, the ordinance is predicated on the principle, that there remains no property to be insured, and of course, no risk to be run.

But suppose, the solvency of the first insurer should become doubtful, what course is to be pursued ? As this is a risk, it ought to be provided against ; and accordingly, we find, that some of these ordinances have declared, that such insurer's solvability may be insured. It is obvious, that this is a point of great delicacy ; for by questioning the solvency of a merchant, you wound his credit, and perhaps, cast him into a state of bankruptcy. Most, if not all, of these ordinances, are of ancient date, and were calculated for the then existing state of commerce in *the several countries which formed them. [*351

It is, however, evident, that the law-merchant varies in different nations, and even in the same nation, at different times. The course of trade, local circumstance, commercial interests and national policy, induce to some variation of the rule. The law in this particular, as it was understood and practised in England, prior to, and at the commencement of, our revolution, was different from the rule which prevailed in France, Spain and other countries, under their local ordinances. A double insurance is, where the same man is to receive two sums instead of one, or the same sum twice over, for the same loss, by reason of his having made two insurances upon the same ship or goods. In such case, the risk must be the same. This kind of insurance is agreeable to the practice and law of England, and is considered as being founded in utility, convenience and policy. In the case of *Godin* v. *London Assurance Company*, in February 1758, Lord MANSFIELD, in delivering the opinion of the court, expressed himself as follows :

" As between them, and upon the foot of commutative justice merely, there is no color why the insurers should not pay the insured the whole : for they have received a premium for the whole risk. Before the introduction of wagering policies, it was, upon principles of convenience, very wisely established, ' that a man should not recover more than he had lost.' Insurance was considered as an indemnity only, in case of a loss ; and therefore,

Thurston v. Koch.

the satisfaction ought not to exceed the loss.[1] This rule was calculated to prevent fraud; lest the temptation of gain should occasion unfair and wilful losses.

" If the insured is to receive but one satisfaction, natural justice says, that the several insurers shall all of them contribute *pro rata*, to satisfy that loss against which they have all insured. No particular cases are to be found, upon this head; or, at least, none have been cited by the counsel on either side.

" Where a man makes a double insurance for the same thing, in such a manner that he can clearly recover against several insurers, in distinct policies a double satisfaction, the law certainly says, 'that he ought not to recover doubly for the same loss, but be content with one single satisfaction for it.' And if the same man, really, and for his own proper account, insures the same goods doubly, though both insurances be not made in his own name, but one or both of them, in the name of another person, yet that is just the same thing; for the same person is to have the benefit of both policies. And if the whole should be recovered from one, he ought to stand in the place of the insured, to receive contribution from the other, who was equally liable to pay the whole." (1 Burr. 492.)

*352]    *In the case of *Newby* v. *Reed*, at sittings after term, in 1763, 2 W. Bl. 416, the same doctrine is laid down, agreed to, and confirmed. For, " it was ruled by Lord MANSFIELD, Chief Justice, and agreed to be the course of practice, that upon a double insurance, though the insured is not entitled to two satisfactions ; yet, upon the first action, he may recover the whole sum insured, and may leave the defendant therein to recover a ratable satisfaction from the insurers."

These cases have never been contradicted, and must be decisive on the subject. The law, as stated in the above adjudications, is recognised by Park and Millar, two recent and respectable writers on marine insurances. Such being the law of England, as to double insurances, before and at the commencement of our revolution, it was also the law of this country, and is so now. It is of authoritative force, and must govern the present case. Besides, if the court were at liberty to elect a rule, I should adopt the English regulation, which divides the loss ratably among the insurers. It is the most convenient, equal and consonant to natural justice, and has been practised upon, nearly half a century, by the first commercial nation in the world. I am not clear, that the practice of France is not in conformity with this rule; for it is probable, that they open but one policy, bearing the same date, though signed at different times, or different policies of the same date; in either of which cases, by the French ordinance, the insurers contribute ratably to satisfy the loss sustained by the insured. If so, it is precisely the English and American rule. Equality is equity : this maxim is particularly applicable to commercial transactions ; and therefore, the rule of contribution ought to be favored. The pressure, instead of crushing an individual, will be sustained by several, and be light. The result is, that the defendant must contribute ratably to make up the loss of the insured.

PETERS, Justice.[2]—The point in this cause is, whether in a case of double

---

[1] But see Aitcheson *v* Lohre, 4 App. Cases 755, where it is said, that a policy of marine insurance is not a contract of mere indemnity.

[2] In the last edition, this opinion was printed in the appendix; it has now been transferred to its proper place.

Thurston v. Koch.

insurance, the policies are to be taken according to priority; that is, whether the second is answerable, before the first is exhausted, if the loss is greater than the sum covered by the first? And if the loss is fully covered by the first, whether, if it be paid by the insurers on the first, they can oblige those on the second to contribute *pro rata?*

To be respectable abroad, and to facilitate and simplify mercantile business at home, we should have a national, uniform and generally received law-merchant. The custom or practice of one state, differing, perhaps, from that of another, must yield to general and established principles. There is, however, no custom of merchants, in this or any other district of the United States, stated in the case, and we cannot travel out of the statement, in giving our judgment.

I mention, as an extraneous fact, of which I have been informed by persons intelligent in business of insurance, that the rule in New York, where they followed the British practice, for a great length of time, was variant from that they now use. The custom in Philadelphia has been, for a long course of years, to settle losses, where there are double insurances, according to priority of policy in date, without regard to time of individual signature: that is, not to call on the second set of underwriters, if those on the first policy were competent, or had paid the amount of subscription or loss. In this event, those on the second policy return the premium, retaining one-half per cent. If this be so, and I have no reason to doubt, it is one of the very few subjects, in which I have been able to discover a decided and universal custom of merchants here. It may have originated, when the British rule was more similar to that of many other nations, than it is now, and was at the time of our revolution. It appears to me, that the custom here is agreeable to the general maritime custom and law of Europe, in this particular. The authorities produced in this cause, on the part of the defendant, warrant me in this opinion. All the European nations, it is true, do not agree: there may not, in every detail, be an exact conformity among any considerable number. But I conceive, that where the greater number of particular laws are coincident in a general principle, this will establish what is called general law. In the point before us, there are exceptions in the laws of Spain, and those of England, to what seems to be the general principle and rule among other trading nations. And the arrangements of those two countries differ from each other.

The law or custom of merchants in England was, formerly, more agreeable to the general custom and maritime law of other nations, than it has been decided, in latter times, to be. It is contended, that the British authorities do not show direct decisions of their courts on this point; yet, they are sufficient to satisfy me, of what the law there is. It appears to me, to be clearly settled as law, in England, that in cases of double insurances, if all the policies cover the same risks, there shall be a ratable contribution. It was so settled, at the period of our independence. It was their law-merchant, which, being part of the common law, was binding on us; and is now engrafted into our maritime code. The cases, before our declaration of independence, clearly show that the law was then so settled. And in cases since that declaration, it is recognised and agreed to be the law. Our insurances in that country being still considerable, the rule is yet useful, on that account, among others.

In France, agreeable to an ordinance of Louis XIV., the first policy is to be exhausted, before the second operates, if dated at different times. But different policies, of the same date, are considered as one, and there is a ratable contribution. In Spain, the date and time of individual subscription are attended to, and insurers are called on, according to priority of subscription, even on the same policy. I have had frequent occasions to recur to Spanish regulations. There is, in most of the Spanish maritime laws and customs, a peculiarity which creates an exception, rather than a rule, on many general principles.

I cannot see, that it will be materially disadvantageous to commerce, to settle this question, in either way contended for in this cause. It is of most importance, that the point should be clearly decided and settled in one or the other way ; that merchants may know, and accommodate their affairs to the decision. This court can, at least, commence the means of final decision.

I believe, with Professor Smith, in his " Wealth of Nations," cited in this cause, that distributing the burden of losses among the greater number, to prevent the ruin of a few, or of an individual, is most conformable to the principles of insurance, and most conducive to the general prosperity of commerce. The wisdom and experience of the British nation, grown out of their more modern and extended state of commerce, have given additional value to this opinion. Whatever respect (and it is not slight) I may entertain for the laws of other nations, I deem myself bound to follow what was the established law and custom of merchants in England, at the time of our becoming an independent nation : not because it was the law merely of that country ; but because it was, and is, our law.

There is sufficient evidence in my mind, in the cases produced out of the British books, to this point, to satisfy me of the law and custom there established on this question. I, therefore, conclude, according to the case of *Newby* v. *Reed* (W. Black. 410), that " the insured may recover the whole sum ; and leave the insurer to recover a ratable proportion, from other insurers, on ' a double policy,' and the insured may elect which set of insurers, or which of the individuals, he will sue for the amount of actual loss ; beyond which he cannot recover, as he can have but one satisfaction."

On the point stated (the details of which merchants can best adjust), I am of opinion, that the defendant is liable to pay to the plaintiff, a contribution, upon the loss paid by him as stated. This contribution must be made by all the insurers, on all the policies, ratably, as their respective subscriptions bear a proportion to each other, and all of them to the actual loss. The defendant, of course, must pay to the plaintiff his ratable proportion, on these principles, according to the amount of his subscription.

**Judgment for plaintiff.**