**TOPA EQUITIES (V.I.), LTD., Plaintiff**
**v.**
**BARED JEWELERS OF THE V.I., INC., Defendant**

Civil No. 184/2000

Territorial Court for the Virgin Islands

Division of St. Thomas and St. John

June 19, 2002

W. MARK WILCZYNSKI, ESQ., GARY E. GARTEN, ESQ., Law Office of W. Mark Wilczynski, P.C., St. Thomas, V.I., *Attorneys for the Plaintiff*

R. ERIC MOORE, ESQ., YVETTE ROSS-EDWARDS, ESQ., Law Office of R. Eric Moore, Christiansted, St.Croix, V.I., *Attorneys for the Defendant*[1]

HOLLAR, *Judge*

## MEMORANDUM OPINION

(June 19, 2002)

This matter came before the Court on January 31, 2002 on the plaintiff's Motion for Summary Judgment, the defendant's Cross-Motion for Summary Judgment, and defendant's Converted Motion for Summary Judgment. The dispute concerns a purported breach of a clause in a lease agreement. The clause allegedly indemnified the plaintiff landlord, Topa Equities (V.I.), Ltd. (Topa), for the defense and settlement of a lawsuit for personal injury sustained by Ms. Lydia Gonzalez while on the premises of the tenant, Bared Jewelers of the V.I., Inc. (Bared).

## I. FACTS AND PROCEDURAL HISTORY

This case is an outgrowth of *Gonzalez v. Topa Equities (V.I.)*, Civil No. 344/1995. On February 8, 1994, while at work, Ms. Lydia Gonzalez, an employee of Bared, allegedly slipped and fell on a spiral staircase located within the Bared jewelry store and sustained injuries. In addition to pursuing a worker's compensation claim against Bared,[2] Ms. Gonzalez sued Bared's landlord, Topa, for negligent maintenance of the staircase.

Topa referred the defense of the *Gonzalez* action to one of its liability insurance carriers, Dorchester Insurance Co. (Dorchester). Coincidentally, Topa and Dorchester are subsidiaries of the same parent corporation, Topa Equities, Inc. Dorchester accepted the defense of the *Gonzalez* action, provided counsel, and answered the complaint. Later, during the pendency of the *Gonzalez* case, Counsel of record for Topa (who was

---

[1] While the Court's ruling on the outstanding motions was still pending, there was a substitution of counsel for the defendant. The new attorney for Bared is Douglas L. Capdeville, Esq.

[2] Because Ms. Gonzalez was injured at work. her exclusive remedy against her employer, Bared, were the remedies set forth under the Workers' Compensation Administration Statute. *See* 24 V.I.C. 284. Ergo, Ms. Gonzalez could not institute a direct common-law action against Bared.

paid by Dorchester) attempted to tender defense of the action to Bared because Bared had an indemnification clause in its lease with Topa which states:

> It is further agreed that *the Lessee assumes all risks or liability for personal injury to any person or any injury to property while on the above described premises*; and the lessee shall at all times indemnify and save harmless the Lessor from any and all claims arising from injury on the above described premises during the term of this lease. It is further agreed that the *Lessee shall provide public liability, and property damage insurance for the benefit of the Lessor and naming Lessor as an assured in the sum of FIVE HUNDRED THOUSAND DOLLARS ($500,000) and damages resulting to any one (1) individual*; FIVE HUNDRED THOUSAND DOLLARS ($500,000) for damages resulting from one (1) casualty; and ONE HUNDRED THOUSAND DOLLARS ($100,000) property damage insurance resulting from any one (1) occurrence. [emphasis added]

It is unclear when or how Bared was contacted. It appears from the complaint in this case that Topa's attorney and an agent of Dorchester, Philip Clemo, both tried to contact Mr. Luis Bared. Although Mr. Bared was a stockholder of Bared Jewelers of the V.I., Inc., he had sold all his stock in 1993, *prior* to Ms. Gonzalez's accident. Mr. Bared directed Topa's counsel to World Duty Free America, Inc. (formerly Duty Free International), which purchased Bared's stock. Complicating matters, Bared, the defendant corporation, dissolved March 12, 1999 and only exists as a body corporate pursuant to V.I. CODE ANN. tit. 13, § 285[3] and other applicable laws. Nevertheless, Dorchester did make contact with Bared through the liability insurer, CNA Insurance Co. (formerly Continental Insurance Co.) (CNA). Bared had purchased a CNA policy for personal injury liability, pursuant to the provisions of the lease, and

---

[3] This sections states in pertinent part:

> With respect ... to any action or proceeding begun or commenced by or against the corporation within three years after the date of the expiration or dissolution, the corporation shall, only for the purpose of such actions or proceedings so begun or commenced, be continued bodies corporate beyond the three-year period and until any judgments, orders, or decrees therein shall be fully executed.

named both Bared and Topa as insureds. CNA offered to pay for any defense, settlement or judgment in the Gonzalez case on a "50/50" basis with Dorchester. Dorchester rejected this offer, insisting that Bared's insurer pay the full cost of indemnifying Topa.[4] No attempt was made to implead Bared or its insurer in the *Gonzalez* matter. Dorchester eventually settled with Gonzalez for One Hundred Twenty Five Thousand Dollars ($125,000) in exchange for releasing Dorchester and Topa from any liability in connection with the accident.

Topa then instituted this current breach of contract action against Bared. Topa alleges that Bared failed to indemnify Topa for the *Gonzalez* lawsuit pursuant to their lease agreement. It does *not* allege that Bared failed to purchase public liability insurance for Topa's benefit that would cover the *Gonzalez* case, as was Bared's responsibility under the lease. Bared did in fact purchase liability insurance with CNA, naming Topa as an insured.

During the course of litigation, Bared filed a Motion to Dismiss. Bared contended that Topa: (1) failed to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6); (2) failed to prosecute in the name of the real party in interest, pursuant to FED. R. CIV. P. 17(a); and (3) failed to join a necessary party, pursuant to FED. R. CIV. P. 19(a). Bared argued that because Dorchester paid for the defense and settlement of the *Gonzalez* matter, Topa could not recover money spent by Dorchester and that Dorchester was the real party in interest pursuant to FED. R. CIV. P. 17(a). In the alternative, Bared argued that Dorchester was a necessary party by virtue of FED. R. CIV. P. 19(a). Topa responded by arguing that it could maintain this action. Additionally, Dorchester entered into a "Ratification" with Topa whereby it authorized Topa to prosecute this action on Dorchester's behalf. This Ratification was made consistent with FED. R. CIV. P. 17(a) and purports to allow Topa to prosecute the action for Dorchester but without joining Dorchester as a named party. Topa maintains that this Ratification is sufficient to allow it to recover money spent by Dorchester in the defense and settlement of the Gonzalez matter.

---

[4] *See* plaintiff's Response to Demand for Production of Documents, Letter from Philip Clemo Dated September, 1998 (no day given) ("I am at a loss to understand why you [Bared's insurer] are only willing to accept responsibility for defense, settlement and judgment costs on a 50/50 basis.").

In addressing that motion, the defendant relied on matters outside the pleadings and therefore the Court, pursuant to FED. R. CIV. P. 12(b)(6), ordered that the motion for dismissal be converted into a motion for summary judgment. *See Smith v. Government of the Virgin Islands*, 4 V.I. 496, 329 F.2d 135 (3d Cir. 1963), *cert. denied*, 377 U.S. 979, 84 S. Ct. 1886, 12 L. Ed. 2d 747 (1964), *reh'g denied*, 379 U.S. 872, 85 S. Ct. 20, 13 L. Ed. 2d 79 (1964); *Government Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 35 V.I. 356, 955 F. Supp. 441 (D.V.I. 1997); *Callender v. Nichtern*, 32 V.I. 96 (Terr. Ct. St. T. & St. J. 1995). The Court allowed both parties to submit appropriate filings and ordered the parties to respond to certain questions propounded by the Court.

Additionally, the plaintiff filed a Motion for Summary Judgment. In response, the defendant opposed the motion and filed a Cross Motion for Summary Judgment. Both of these motions deal with whether the indemnity clause was applicable to the *Gonzalez* matter.

A hearing was held on January 31, 2002 on the outstanding motions. Following arguments on the motions, the decision was reserved.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In considering a motion for summary judgment, a court must draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party. *See Battaglia v. McKendry*, 233 F.3d 720, 722 (3d Cir. 2000). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996). Once the moving party has met this initial burden, the non-moving party must present concrete evidence that supports each essential elements of its claim. *See id.* Disputes involving the interpretation of unambiguous contracts are resolvable as a matter of law and are, therefore, appropriate cases for summary judgment. *See Mountaintop Ltd. Partnership v. Colombian Emeralds International, Inc.*, 43 V.I. 193 (Terr. Ct. St. T. & St. J. 2001).

## III. DISCUSSION

The issues the Court must address in resolving the outstanding motions are: (1) whether the *Gonzalez* matter was covered by the indemnity

clause contained in the lease between Topa and Bared; (2) whether Topa, in its own capacity, can recover money spent by Dorchester in the defense and settlement of the *Gonzalez* matter; (3) whether the "Ratification" would allow Topa to prosecute this action on Dorchester's behalf while Dorchester remains absent from this litigation; and (4) whether Dorchester has any substantive rights to sue Bared for breach of contract.

## A. The *Gonzalez* Matter Was Covered by the Indemnity Clause in the Lease between Topa and Bared.

The plaintiff's Motion for Summary Judgment contends that Ms. Gonzalez's accident occurred on the leased premises and therefore was covered by the indemnity clause. The defendant's Cross-Motion for Summary Judgment argues that: (1) the language of the indemnity clause was not broad enough to cover Topa's own negligence; and (2) the spiral staircase upon which Ms. Gonzalez fell was not covered by the indemnity clause because it was not "on the described premises."

### 1. The Language Contained in the Lease Requires Bared to Indemnify Topa, Even in the Case Where the Liability Arose from Topa's Own Negligence.

In *Gonzalez,* the plaintiff alleged that Topa negligently constructed or designed the spiral staircase where she fell. Topa maintains that, under the lease, Bared should have taken on the responsibility for defending Topa and if necessary, paying for a settlement or judgment in the *Gonzalez* action. Paragraph 9 of the lease agreement between Topa and Bared states in pertinent part:

> It is further agreed that the Lessee assumes *all risks or liability* for personal injury to *any person or any injury'* to property *while on the above described premises* and the lessee shall at all times indemnify and save harmless the Lessor from *any and all claims* arising from injury *on the above described premises* during the term of this lease. [emphasis added]

Bared argues that the indemnification clause does not cover Topa for Topa's own negligence. Some courts are averse to allowing indemnification for an indemnitee's own negligence due to the hazard of taking on an unknown liability. *See Jacobs Constructors, Inc. v. NPS*

*Energy Services, Inc.*, 264 F.3d 365, 371-72 (3d Cir. 2001) (ruling on Pennsylvania law). The Third Circuit, when ruling on Virgin Islands matters, has no such aversion. *See Eastern Airlines, Inc. v. Insurance Co. of North America*, 758 F.2d 132, 135 (3d Cir. 1985). Both Bared and Topa recognize that, "The law now permits the indemnitee to recover for its own negligence if the court is firmly convinced that such an interpretation reflects the intention of the parties." *Beloit Power Systems, Inc. v. Hess Oil Virgin Islands Corp.*, 757 F.2d 1427, 1431 (3d Cir. 1985), *quoting U.S. v. Seckinger*, 397 U.S. 203, 211, 90 S. Ct. 880, 885 (1970). Bared argues that Topa cannot be indemnified for Topa's own negligence unless there is unequivocal language in the contract that indicates such. In addressing this very issue, the Supreme Court held: "We specifically decline to hold that a clause that is intended to encompass indemnification for the indemnitee's negligence must include an 'indemnify and hold harmless' clause or that it must *explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence.*" *Seckinger*, at note 17 (emphasis added). Under Virgin Islands law, the Third Circuit has held that, "an indemnity provision *need not specifically refer to the indemnitee's negligence if the language is sufficiently broad and unambiguous.*" *Eastern Airlines* at 134 (emphasis added). The terms "all risks or liability" and "any and all claims" are sufficiently clear and unequivocal to extend to claims alleging Topa's negligence. Moreover, the lease agreement required Bared to purchase insurance and name Topa as an insured on the policy. Such a requirement clearly indicates the intention of the parties to allow Topa to be indemnified for its own negligence. *See id.*

One policy that underlies the heightened scrutiny for such an indemnity clause is the concern regarding disparities in bargaining power. *See Frederick v. Hess Oil Virgin Islands Corp.*, 492 F. Supp. 1338, 1343 (D.V.I. 1980); *Seckinger, supra* 397 U.S. at 212, 90 S. Ct. at 885. Courts are apprehensive about indemnity clauses forced upon parties with weak bargaining power that transfer enormous liability from the party with strong bargaining power. There is no such concern here. Although Topa did draft the contract, there is no indication that a significant disparity exists in relative bargaining power between the parties. Both parties are sophisticated business entities. Furthermore, the potential transfer of the unknown liability of Topa was minimized by Bared's duty to obtain a liability insurance policy for Topa's benefit.

Additionally, if this clause did not extend to indemnify Topa for Topa's own negligence, to what would it extend? Almost any claim against Topa for personal injury on the leasehold property would have to involve an allegation of Topa's negligence. The Court is thoroughly convinced that the language in the lease agreement allows Topa to be indemnified by Bared for Topa's own negligence. Accordingly, if the injury occurred on the leasehold premises, then Topa would be covered by the indemnity clause, even for its own negligence.

### 2. The Accident in the *Gonzalez* Matter Occurred on the Leasehold Premises.

Bared also contends that Ms. Gonzalez's accident did not occur "on the described premises" as required by the indemnity clause. The premises are described as "The front portion of the ground floor of the building located at No. 34 Dronningens Gade ... and more particularly described in the attached Exhibit 'A'." Exhibit 'A' is a drawing of Topa's building, with part of the building shaded, indicating Bared's portion. Although the drawing includes a mezzanine, the spiral staircase that connects the floor to the mezzanine is not so reflected. Both parties, however, recognized the existence of such a set of stairs prior to and during the term of the lease.

It is upon these stairs that Ms. Gonzalez slipped and fell. Bared concludes that the stairs are not on the described premises because: (1) the stairs were not marked on the drawing; (2) the stairs lead to an area not rented by Bared; and (3) maintenance of the stairs was the contractual responsibility of Topa. Even if the Court does not adopt this interpretation, Bared contends, its construction creates an ambiguity in the contract. An ambiguous term in a contract is interpreted against the drafter, in this case against Topa. *See Sharpe v. West Indian Co.*, 118 F. Supp. 2d 646, 650 (D.V.I. 2000) ("After examining the pertinent terms of the contract, the Court will apply the maxim *omnia praesumuntur contra proferentem* and favor that meaning which least benefits the drafter, if it finds one or more provisions are subject to multiple reasonable meanings."); RESTATEMENT (SECOND) OF CONTRACTS § 206 (1979).

The Court is not persuaded that the interpretation of the term "on the described premises" warrants a finding of ambiguity. Unless circumstances indicate otherwise, a common or normal meaning must be given to the words of a contract. *See Dyer v. Worldwide Protein, Inc.*, 21

V.I. 275, 278 (Terr. Ct. St. C. 1985). The natural meaning of the term "ground floor" used in a lease agreement includes the interior space of the first level of a building, extending from the floor to the ceiling. The parties certainly intended this definition because Bared was given responsibility for maintenance of the "interior" under the lease. Bared knew when leasing the portion of Topa's building that there was a spiral staircase in the interior of the ground floor. Because the stairs are in the three-dimensional space of the leasehold, the Court concludes that the stairs were "on the described premises."

The fact that the stairs were not marked on the drawing makes no difference in determining whether the stairs were part of the described premises. The leasehold entitled Bared to use and enjoy *all the interior space of the leasehold,* bounded by walls, the floor and the ceiling. The stairs were in that space and hence part of the described premises.

It is also not necessarily the case that the mezzanine portion was excluded from the leasehold. First of all, on the drawing attached to the lease, the area labeled "mezzanine" was shaded-indicating that it was part of the Bared's leasehold. Moreover, at the hearing, counsel for Bared agreed that the spiral stairs in question were the only way to access the mezzanine. Therefore, only Bared, its employees and invitees could gain access to the mezzanine. Bared regularly used the mezzanine in its business at the leasehold. In fact, the complaint in *Gonzalez* alleges that Ms. Gonzalez was required to use the staircase in question as a condition of her employment as a fragrance clerk.[5] Even if the Court were to hold that the mezzanine was not part of the described premises, it would not matter because the staircase itself was in the interior and hence on the described premises.

Bared would like the Court to find that the term "on the described premises" is ambiguous. An ambiguity lies only when a term used in a contract is susceptible to two or more meanings. *See Cat Aircraft Leasing, Inc. v. Cessna Aircraft Co.,* 22 V.I. 442, 445 (D.V.I. 1986). Bared asks the Court to find that the term "on the described premises" is reasonably susceptible to the meaning that the staircase, although in the interior of the leasehold, is not "on the described premises." That interpretation of the term would lead to illogical, if not absurd, results. It

---

[5] The Court notes that Ms. Gonzalez also received Workers' Compensation benefits, suggesting that the accident was work-related.

is difficult to understand how someone standing on the spiral staircase could be both inside the interior of the leasehold but not on the described premises. The following example illustrates this point. Imagine a person standing on the spiral staircase two feet off the ground. Another person is standing on a two-foot high footstool within inches of the person standing on the stairs. A ceiling tile falls and lands on both of their heads, injuring both of them. Under Bared's theory, Bared is responsible for the person on the footstool but not the person on the stairs because the person on the stairs is "off" the described premises. The Court rejects any suggestion that "on the described premises" could mean that a person in the interior of the leasehold could be off the described premises.

Bared further alleges that maintenance of the stairs was Topa's responsibility and therefore the stairs were not on the described premises. Paragraph 7 of the lease states in pertinent part, "The Lessor shall, at its own expense, maintain the roof, exterior walls of said premises, rest rooms, corridors and *stairways* of said building." (emphasis added). Notwithstanding Topa's obligation under Paragraph 7, Bared nevertheless remained obligated to indemnify Topa, by virtue of the indemnity clause in the lease even if the accident was caused entirely by Topa's negligent maintenance. Moreover, landlords are often responsible for maintenance of things on the premise of the leasehold. However, such responsibility does not suggest that the area to be maintained should be excluded from the premises leased.

Therefore, the Court finds no ambiguity as to whether the spiral staircase upon which Ms. Gonzalez fell was "on the described premises." Accordingly, the Court finds that the *Gonzalez* matter was covered by the indemnity clause of the lease agreement.

## B. Topa Can Only Recover for Expenses That Were Not Reimbursed by Dorchester.

The defendant originally moved for dismissal, claiming that the complaint fails to state a claim upon which relief can be granted because Topa did not incur any losses. *See* FED. R. CIV. P. 12(b)6. Bared claimed that Dorchester fully paid for the defense and settlement of the *Gonzalez* matter. This is a question of fact that cannot be resolved on the pleadings alone. Accordingly, the Court ordered a Converted Motion for Summary Judgment.

Persons who are covered by multiple insurers are free to choose, among the equally liable insurers, who will pay for that liability. *See Air Products and Chemicals, Inc. v. Hartford Accident and Indemnity Co.*, 25 F.3d 177, 181 (3d Cir. 1994) *citing J. H. France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29 (1993) ("In order to accord J. H. France the coverage promised by the insurance policies, J. H. France should be free to select the policy or policies under which it is to be indemnified."). Moreover, an insured can do so "until fully indemnified for the claim." *See id.* An insured cannot receive an amount *more* than the liability just because he has double coverage. "The fact that several insurance policies may cover the same risk does not increase the insured's right to recovery for the loss, or give the insured the right to recover more than once. Rather, the insured's right of recovery is restricted to the actual amount of the loss." *Fireman's Fund Ins. Co. v. Maryland Casualty Ins. Co.*, 77 Cal. Rptr. 2d 296, 305 (Cal. App. 4th Div. 1998) *citing* 16 George J. Couch, *et al.*, COUCH ON INSURANCE, *Contribution & Apportionment*, § 61:1, pp. 433-435 (2d ed. 1983). Applying the existing law in this area, this Court will not condone Topa receiving a windfall of money delivered on the injured back of Lydia Gonzalez. Ergo, no double or multiple recovery will be allowed.[6]

■ The Court finds that Topa chose Dorchester out of its insurers to defend the *Gonzalez* claim. Topa immediately turned to Dorchester as soon as it was served with process in that matter. Most importantly, Dorchester did in fact pay for the settlement of the claims in *Gonzalez*. Because Dorchester did appropriately cover Topa's settlement liability in the *Gonzalez* matter, Topa cannot get a second recovery against Bared for that settlement amount covered by Dorchester. With the exception of some nominal expenses, Topa has not suffered any economic loss for the settlement or legal expenses because it was Dorchester who paid for the legal fees and the One Hundred Twenty-Five Thousand Dollars ($125,000) settlement to Ms. Gonzalez.[7]

---

[6] The policy against double recovery does not apply to multiple life insurance policies or to other cases where strong public policy would favor a double recovery. *See* COUCH ON INSURANCE, at § 217:3 ("Under some types of insurance, such as life insurance, the insured may even obtain a double recovery [from multiple insurers].").

[7] Because Topa suffered no economic losses, it is in the same position it would have been had it received the "benefit of the bargain" from its lease contract with Bared.

Topa contends that it should recover all the money spent, even money spent by Dorchester. Under its own theory, Topa would actually profit from its own negligence. Every time Topa negligently maimed, killed or wounded an invitee on its property, Topa would get a windfall from its multiple insurers. Because the duty to Topa under the indemnification clause does not extend to paying any amounts already spent by Dorchester, Topa is only entitled to recover money that it has spent.[8] Topa therefore cannot, *in its own capacity*, collect the One Hundred Twenty Five Thousand Dollars ($125,000) paid to Ms. Gonzalez in settlement of *Gonzalez v. Topa Equities (V.I.)*, Civil No. 344/1995, nor any monies expended by Dorchester in the defense and settlement of that matter. Topa shall, however, be allowed to maintain its claim for legal expenses that have not been reimbursed by Dorchester.[9]

## C. Assuming Dorchester Has a Substantive Right to Relief, the Ratification Would Permit Topa to Maintain a Suit on Dorchester's Behalf.

Bared argues that Dorchester is the real party in interest because it was the one that incurred the loss and hence Dorchester must be either joined or substituted. Topa maintains that if Topa itself is not entitled to recover defense and settlement costs, it may at least maintain this action on Dorchester's behalf pursuant to the Ratification. Of course, Dorchester is not a party to this litigation and the complaint does not plead specific facts that state that Dorchester has a claim against Bared.[10] However, argues Topa, the Ratification essentially prevents Dorchester from pursuing its own claim and instead Dorchester will rely on reimbursement from any money awarded to Topa. Thus, there is no need to join or substitute Dorchester.

---

[8] Up to this point, Topa has only suggested that it incurred Three Hundred Sixty-Eight Dollars and Seventy-Five Cents ($368.75) in out of pocket costs. The Court is not aware of any other costs incurred directly by Topa.

[9] The Court notes but does not decide that any amount paid by Bared to cover Topa's out of pocket expenses may be subject to contribution by Dorchester and any other primary insurer.

[10] The Court does not rule on whether the plaintiff must amend its complaint to allege facts upon which relief may be granted to Dorchester against Bared.

The Federal Rules of Civil Procedure permit Topa to maintain an action on behalf of Dorchester. FED. R. CIV. P. 17(a) states in part, "Every action shall be prosecuted in the name of the real party in interest." However, that rule goes on to state, "No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection *for ratification* of commencement of the action by, or joinder or substitution of, the real party in interest; and *such ratification*, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." (emphasis added).

The ratification option is rarely used, but does provide an alternative to either joinder or substitution. *See Stouffer Corp. v. Dow Chemical Co.*, 88 F.R.D. 336 (D. Pa. 1980). "Ratification" as the term is used in Rule 17(a) does not necessarily fit the traditional understanding of that term in agency or corporate law. Ratification allows a person who has an interest in a lawsuit (such as an insurer whose interest stems from subrogation) to agree to be bound to the outcome of that suit without becoming a named party.[11] This is *not* to say that the named plaintiff may prosecute a claim having no interest in the litigation (and therefore not being a "real party in interest"). All named plaintiffs must be a real party in interest.

Nonetheless, courts have recognized that there may be multiple real parties in interest. *See, e.g., St. Paul's Episcopal Church v. Virgin Islands Water and Power Authority*, 38 V.I. 93, 95 (Terr. Ct. St. C. 1998) (allowing insured to prosecute the claim on insurer's behalf through ratification when both the insured and the insurer were real parties in interest). Ratification allows one real party in interest to prosecute a claim on the behalf of both itself and an absent real party or parties in interest.

---

[11] Although this statement seems to be at odds with the initial sentence of Rule 17(a) ("Every action shall be prosecuted in the name of the real party in interest."), courts have allowed such ratifications. *See* June F. Entman, *More Reasons for Abolishing Federal Rule of Civil Procedure 17(a): The Problem of the Proper Plaintiff and Insurance Subrogation*, 68 N.C. L. Rev. 893, 945 (1990). Ratification may be appropriate when there are multiple parties who have an interest in the litigation. The plaintiff must be a real party in interest. However, additional persons who are also real parties in interest may, through proper ratification, simply allow the plaintiff to prosecute the claim on their behalf.

■■ The primary purpose of Rule 17 is to prevent the defendant from being subjected to multiple suits for the same transaction. *See ICON Group, Inc. v. Mahogany Run Development Corp.*, 829 F.2d 473, n. 3 (3d Cir 1987); FED. R. CIV. P. 17 advisory committee's note (1966 Amend.), *reprinted in* Steven Baiker-McKee, *et al.*, FEDERAL CIVIL RULES HANDBOOK 2002, 1182-83 (West 2002). Ratification requires that multiple real parties in interest be bound by a single adjudication. Thus, under a proper ratification, assuming the ratifier has an interest in the suit, the ratifier must: (1) authorize continuation of the action; and (2) agree to be bound by its result. *See id.* at 478. The Ratification in this case states, "By entering into this Agreement, Insurer authorizes Insured to prosecute this action on its behalf." It also says that Dorchester is, "bound by the outcome of this action ... forever waiving any rights to pursue any subrogation claims against [Bared]." Accordingly, the Court finds that, *if* Dorchester is a real party in interest, it satisfies all the requirements for a ratification. Thus, there is no need to join or substitute Dorchester.

## D. Dorchester Has No Substantive Right to Relief in This Breach of Contract Action.

The question of the efficacy of the ratification was predicated on the assumption that Dorchester is a real party in interest. To have a valid Ratification, Dorchester must possess a valid claim against Bared. The Ratification can be thought of as an assignment. Dorchester 'assigns' to Topa its right to sue Bared, with the assumption that Dorchester will be reimbursed for the amount of its loss.[12] Topa cannot maintain an action on Dorchester's behalf if Dorchester does not have an interest in it. "The courts of this Circuit consider insurance carriers to be real parties in interest, for the purposes of Rule 17(a), if the applicable substantive law confers on them the substantive rights at issue in the suit."[13] *Stouffer*

---

[12] Dorchester and Topa are subsidiaries of the same parent corporation; therefore the court can only assume that Dorchester will be reimbursed.

[13] For a discussion of why it should be necessary for the Court to determine if a ratifier is a real party in interest, *see,* Entman, at 911-15 ("The courts [often] fail to address what ought to be the crucial question—who is entitled under the substantive law to maintain and control an action against the third party. The problem is most pronounced when, as is most often the case, the insurer has only partially compensated the insured for the loss.").

285

*Corp.*, *supra* (citations omitted). Accordingly, the Court must inquire whether Dorchester has a substantive right at issue in the suit.

This lawsuit here is an action for breach of contract. Ordinarily, a person must be in privity of contract with the defendant to have the substantive right to sue for breach. *See Harvey Aluminum Inc. v. De Chabert*, 266 F. Supp. 143, 147 (D.C.V.I. 1967). However, Topa asserts that Dorchester has an interest in this litigation through subrogation. Topa assumed that Dorchester has a right to recover the money it spent on the *Gonzalez* matter through the operation of the law of subrogation. Dorchester then authorized Topa to maintain its subrogated claim on Dorchester's behalf. The Court, however, must ask: Is Dorchester entitled to maintain a claim based on the law of subrogation? Topa can only prosecute a claim on Dorchester's behalf if Dorchester is entitled to assert a subrogated claim to begin with.

## 1. Dorchester is Not Entitled to Subrogated Rights Against Bared.

"The local law in the Virgin Islands is murky at best on the applicability of the doctrine of equitable subrogation ..." *Prime Hospitality Corp. v. General Star Indemnity Co.*, 41 V.I. 284, 287 (D.V.I. 1999). Subrogation is an *equitable* doctrine[14] that allows an insurer to step into the "shoes" of the insured for the purpose of placing the entire burden of the loss on the ultimately liable party. *See Dome Petroleum Ltd. v. Employers Mutual Liability Ins. Co. of Wisconsin*, 767 F.2d 43, 46 (3d Cir. 1985); *and Greater New York Mut. Ins. Co. v. North River Ins. Co.*, 85 F.3d 1088, 1095 (3d Cir. 1996) ("[Subrogation] is designed to facilitate the placement of the burden of debt on the party who should bear it."). *Subrogation was created to avoid unjust enrichment. See* 16 Lee R. Russ and Thomas F. Segalla, COUCH ON INSURANCE, Nature and Types of Subrogation, § 222:8, pp. 33-34 (3d ed. 2000). For example, a person who has been injured but has proper insurance may collect money pursuant to the terms of that insurance for his injuries. Because the injured person cannot get a double recovery, a third person who may

---

[14] Equity governs even where the subrogation occurred pursuant to a contract. *See* AM. JUR. 2D, *Subrogation* § 4 (2001) ("However, despite the existence of a contract, the right of subrogation is equitable in nature whether or not it is referred to as such in the contract or governed by its express terms as such.").

have caused the injury or is ultimately liable for it would be unjustly enriched by avoiding payment to the injured person. Subrogation allows an insurer that compensated an insured for injuries to sue the ultimately liable person directly. Basically, by paying for the injuries of an insured, an insurance company acquires the insured's right to sue a third person for those injuries. In effect, subrogation transfers the entire burden from the insurer to the person who in, good conscience, ought to pay the entire amount of the injury, namely, the ultimately liable person.

The Court ordered the parties to answer the following question: "What legal elements are necessary for an insurer to become subrogated to an insured's claim?" Bared fails to give any direct answer. Topa states, "[I]n general, an insurer is subrogated to the insured's claims when he pays for the loss and there is another party responsible for that loss, however that responsibility for the loss arises, whether in contract or tort."[15] While this is a general description of subrogation, it falls well short of articulating the legal elements of subrogation. These elements can be stated as follows:

(a) the insured suffered a loss for which the defendant is liable, either as the wrongdoer whose act or omission caused the loss or because the defendant is legally responsible to the insured for the loss caused by the wrongdoer; (b) the claimed loss was one for which the insurer was *not* primarily liable; (c) the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable; (d) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (e) the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer; (f) the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends; (g) *justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the*

---

[15] In its Opposition to the Converted Motion for Summary Judgment, Topa maintained that the Ratification eliminates the question of subrogation because all rights are returned to Topa. The Court rejects this argument. If Dorchester does not have a subrogated claim, there is nothing to return.

*insurer*; and (h) the insurer's damages are in a liquidated sum, generally the amount paid to the insured.

*Fireman's Fund, supra*, at 302 *cited in* 16 Lee R. Russ and Thomas F. Segalla, COUCH ON INSURANCE, Basic Elements of Subrogation, § 223:1, pp. 11-14 (3d ed. 2000). The Court finds that Dorchester has no right to a subrogated claim because the *entire* loss should not be shifted from Dorchester to Bared, pursuant to element (g) stated above. The Court finds that *both* Dorchester and Bared are co-insurers of the same risk for the same property at the same primary level. The Court also notes, but does not decide, that CNA may be another primary insurer of this same risk. As such, it is inequitable to shift the *entire* burden of the loss on just one of these insurers. Multiple insurers should be liable through *contribution*, an action specifically *not* relied upon by the plaintiff. The plaintiff states most emphatically in its September 28, 2001 pleading, "There is no common law contribution claim because this is a CONTRACTUAL INDEMNIFICATION case." (emphasis in original).

### a. Dorchester and Bared are insurers of the same risk at the same level.

Both Dorchester and Bared promised to indemnify Topa for injuries that occurred on Topa's property. Dorchester's duty attached immediately upon Ms. Gonzalez's accident. The Dorchester policy itself states that it is a primary insurer: "The insurance afforded by this policy is primary insurance except when stated to apply in excess of or contingent upon the absence of other insurance." Given that there were no endorsements regarding the leasehold, the Court finds that Dorchester was one of at least two primary liability insurers of the property in question. Primary insurance is coverage that attaches immediately upon the happening of a covered occurrence. *See Hertz Corp. v. Federal Ins. Co.*, 713 A.2d 820 (Conn. 1998), *cited in* 33A WORDS AND PHRASES, "Primary Insurance" p. 281 (Supp. 2001). Hence, as a primary insurer, Dorchester's obligation to indemnify Topa attached immediately upon Ms. Gonzalez's accident.

■ Bared also agreed through the indemnification clause of its lease with Topa to assume all risks or liability for personal injury and to indemnify Topa. Bared's duty attached at the same time as Dorchester's duty: upon the occurrence of an accident. It does not matter that

Dorchester's liability arose from an insurance policy and Bared's arose from a clause in a lease contract.[16] "[T]here is no public policy that would require the risk of loss to fall on a contractual indemnitor as against an insurer." *Dome Petroleum* at 46. Moreover, Bared was required under the same indemnification clause that held it responsible for Topa's liability to purchase insurance liability coverage and name Topa as an insured. Both Dorchester and Bared benefited from taking on primary-level liability. Dorchester received premiums to be the primary insurer on this risk. Although Bared did not receive premiums, the risk was part of the bargained-for consideration of the lease contract. The Court finds that Dorchester and Bared are co-insurers, who covered the same insured, the same liability and the same level of risk.

### b. Subrogation is inappropriate for co-insurers of the same risk at the same level because subrogation would inequitably shift the entire burden to one of multiple insurers.

Simply put, subrogation is an inappropriate tool for allocating the costs of the *Gonzalez* matter because it shifts the *entire* loss to one of two equally responsible parties. To have Bared shoulder the *entire* burden of the loss when both Dorchester and Bared have received economic benefits for being primarily liable for the risk would unjustly enrich Dorchester. As a co-insurer who covers the same insured for the same risk at the same (primary) level, Dorchester should be expected to *contribute* to Topa's loss. COUCH ON INSURANCE, § 218:3, pp. 8-9. It is only fair that co-insurers of the same risk at the same level must share the burden of the liability because they both received economic benefit for agreeing to do so.

It is well established that multiple insurers for the same risk at the same level must share a covered liability through some form of *contribution*. *See* COUCH ON INSURANCE, at § 217:4.[17] Allowing sub-

---

[16] This is true even though the lease contract states, "the Lessee assumes all risks or liability." The Court holds that the word 'assumes' in this context means no more than 'agrees to pay for.' *See* 4A *Words and Phrases,* "Assume-Agree to Pay" pp. 238-41 (West 1969).

[17] This has long been the rule in both American and English law. *See Thurston v. Koch,* 23 F. Cas. 1183 (Cir. Ct. D. Pa. 1800) (recognizing the need for *contribution* in the case of "double" insurance and stating English practice).

rogation would impermissibly shift the *entire* burden from Dorchester to Bared. As a result of such a shift, Bared would have discharged Topa's *entire* liability for the *Gonzalez* matter. Bared would then be entitled to contribution from Dorchester![18] Obviously, the entire Burden should not be placed on only one of multiple concurrent insurers. Therefore, subrogation would be inequitable.

Moreover, Dorchester's policy specifically addresses multiple insurers, "[W]hen both this and other insurance apply to the loss on the same basis, whether primary, excess, or contingent, [Dorchester] shall not be liable under this policy for a greater proportion of the loss than [either 'contribution by equal shares' or 'contribution by limits']." Clearly, Dorchester contemplated the existence of other insurance at the same primary level and expected contribution to be the method for distributing the burden among all co-insurers. If Dorchester did not want the burden of contribution for the property in question, it could have added an exclusion endorsement stating the policy would only apply "in excess of, or contingent upon the absence of, other insurance" for the property in question. It did not.

■ This Court decision today does not affect the right of *excess* insurers to maintain subrogated claims against primary insurers and does not reach questions regarding interpretation of 'other insurance' clauses. However, co-insurers who cover: (1) the same insured; (2) for the same risk; and (3) at the same (primary) level are not entitled to make "subrogated" claims against other such insurers. One such co-insurer should not shoulder the entire burden while another pays nothing. Yet, that would be the effect of allowing a subrogated claim. Instead, such insurers must look to contribution to appropriately distribute the burden among such co-insurers.

Since Dorchester will not be allowed to assert a subrogated claim *for breach of contract*, Dorchester has no substantive right upon which relief may be granted in this breach of contract action. Therefore, Topa cannot maintain any breach of contract claim on Dorchester's behalf and the Ratification between them is a nullity.

---

[18] "In the insurance context, the right to contribution among insurers arises [when] a single insured is covered by concurrent or 'double' insurance, and one insurer paid all, or greater than its share, of a loss." COUCH ON INSURANCE, at § 217:4, p. 12.

## III. CONCLUSION

The indemnity clause in the lease between Bared and Topa applies to the *Gonzalez* matter. The clause was sufficiently broad to indemnify Topa for its own negligence. The term "on the described premises" included all the interior space of the leasehold including the stairs where Ms. Gonzalez slipped, fell, and sustained injuries.

With the exception of possible nominal legal expenses, Topa has not been harmed or financially injured in any way as a result of the *Gonzalez* matter because it was almost completely indemnified by Dorchester. Topa can only receive a single recovery. Bared only has a duty under the lease agreement to indemnify Topa for money that it actually lost, *i.e.*, money that Topa paid "out of pocket" in connection with the *Gonzalez* litigation. Accordingly, on its breach of contract theory, Topa may recover only *bona fide* legal expenses proven to be expended for the defense of the *Gonzalez* matter and which were not covered by Dorchester. Topa may *not* however, recover any part of the One Hundred Twenty Five Thousand Dollars ($125,000) spent in settlement of that action or any money spent by Dorchester in defending Topa in that action.

The form of the Ratification executed by Dorchester to Topa is sufficient to allow Topa to prosecute any viable subrogated breach of contract claim on Dorchester's behalf. It authorized the continuation of this action and bound Dorchester to the results. Accordingly, the *form* of the Ratification complies with the requirements of FED. R. CIV. P. 17(a).

The Ratification, however, is a nullity because Dorchester has no substantive right to sue Bared. Dorchester and Bared are co-insurers of the same insured, for the same risk, on the same primary level. Hence, it would be inequitable to transfer the *entire* liability to Bared. Dorchester's remedy, if any, must come through an action for *contribution* against other insurers and not an action for breach of contract.

Because Dorchester has no right to maintain a subrogated breach of contract claim against Bared, it has no substantive right to sue Bared in this action under Topa's complaint. Having no substantive right to sue for breach of contract, it is neither a real party in interest nor a necessary party. Therefore, there is no need to join Dorchester under either FED. R. CIV. P. 17(a) or 19(a). Accordingly, Bared's motions to dismiss for

failure to join the real party in interest and to dismiss for failure to join a necessary party are denied.